## Nathan Sentner *v.* Board of Trustees of Regional Community Colleges

Bogdanski, C. J., Peters, Healey, Armentano and Shea, Js.

Argued March 11—decision released June 9, 1981

*Robert E. Walsh,* assistant attorney general, with whom were *Thomas P. Clifford III,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attor-

ney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellant (defendant).

*Paul B. Zolan,* with whom, on the brief, were *Robert L. Hirtle, Jr.,* and *Marianne D. Smith,* for the appellee (plaintiff).

BOGDANSKI, C. J. In this case the trial court determined that the only defendant, the board of trustees of Regional Community Colleges (board), had acted on the basis of insufficient evidence in terminating the plaintiff's employment. The court ordered the defendant to reinstate the plaintiff as a tenured professor at Manchester Community College. This appeal followed.

In his complaint, the plaintiff made the following allegations. He began teaching for the Connecticut Community College system in the fall of 1969 as an assistant professor at Greater Hartford Community College. He continued in this position until August 1973, when he was appointed to the same position at Manchester Community College, where he continued to teach through the academic year 1976-77. In March 1974, the president of Manchester Community College recommended that the plaintiff's contract not be renewed after the 1974-75 year. The plaintiff appealed that recommendation. In August 1975, a hearing committee determined that the evaluation of the plaintiff did not follow the procedures set by the board. On September 15, 1975, the board of trustees, an official agency of the state of Connecticut, directed that the plaintiff be employed on a standard appointment at Manchester Community College, or at another community college. The plaintiff remained an assistant professor at

Manchester Community College during 1975-76. On April 14, 1976, he received a letter from Dr. Ronald Denison, president of Manchester Community College. The letter said that Denison intended to recommend that the board of trustees not renew the plaintiff's contract. Hearings were held to determine the fairness and validity of the procedures used to evaluate the plaintiff. The complaint further alleged that those hearings, which concluded July 28, 1977, were unfair, violated the personnel policies of the board, and violated the fourteenth amendment of the United States constitution by denying the plaintiff due process, and that the plaintiff had suffered irreparable harm for which he had no adequate remedy at law.

By way of relief, the plaintiff requested full back pay and an order directing the defendant to continue the plaintiff's employment with tenure.

The defendant demurred asserting that it, as an agency of the state, is immune from suits to which the state has not consented, and that the plaintiff had not alleged state consent to the action. The demurrer was overruled.

After trial, the court concluded: (1) that the plaintiff had achieved tenure under the defendant's procedures; (2) that the plaintiff's tenured status and procedural due process require an adequate and full hearing before the defendant may dismiss the plaintiff; (3) that the evidence before the defendant could not sustain the decision to dismiss the plaintiff; (4) that the provisions of the Uniform Administrative Procedure Act do not provide a legal remedy to the plaintiff; (5) that the plaintiff does not have an adequate legal remedy; and (6) that without equitable action the plaintiff would suffer irreparable harm.

On this appeal the defendant raises three issues: (1) whether sovereign immunity shields the board of trustees of regional community colleges, as an entity, from this suit; (2) whether the conclusion that the plaintiff had achieved tenure was supported by the evidence; and (3) whether the court erred in ruling that the defendant improperly dismissed the plaintiff.

## I

## A

We have long recognized the common-law principle that the state cannot be sued without its consent. *Horton* v. *Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977); *Textron, Inc.* v. *Wood,* 167 Conn. 334, 339, 355 A.2d 307 (1974). We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. *Horton* v. *Meskill,* supra; *Textron, Inc.* v. *Wood,* supra; *Baker* v. *Ives,* 162 Conn. 295, 297, 294 A.2d 290 (1972); *Murphy* v. *Ives,* 151 Conn. 259, 262, 196 A.2d 596 (1963); *Anderson* v. *Argraves,* 146 Conn. 316, 320, 150 A.2d 295 (1959). Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant. *Anselmo* v. *Cox,* 135 Conn. 78, 79–80, 60 A.2d 767, cert. denied, 335 U.S. 859, 69 S. Ct. 132, 93 L. Ed. 405 (1948); *Rusch* v. *Cox,* 130 Conn. 26, 34, 31 A.2d 457 (1943).[1] In view of our practice of not distin-

---

[1] But see *Silberman* v. *McLaughlin,* 129 Conn. 273, 275, 27 A.2d 634 (1942) (not proper to declare a general right against the state because the state is not a party although the action named the tax commissioner, attorney general, comptroller, and treasurer as defendants).

guishing between suits against the state and those against state officers representing the state, we reject the defendant's argument that sovereign immunity imposes a stricter bar to a suit that names as the sole defendant the board of trustees of regional community colleges than to a suit which names the board members.

## B

"[T]he principle of sovereign immunity . . . has . . . been modified and adapted to the American concept of constitutional government where the source of governmental power and authority . . . rests in the people themselves who have adopted constitutions creating governments with defined and limited powers and courts to interpret these basic laws. The source of the sovereign power of the state is now the constitution which created it." *Horton* v. *Meskill,* supra.

In a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts. *Horton* v. *Meskill,* supra, 624; *Simmons* v. *Parizek,* 158 Conn. 304, 306–307, 259 A.2d 642 (1969). The plaintiff alleged that he had tenure at a state institution and that the defendant denied him a fair hearing on the cause for its termination of his employment. Under the allegations of the complaint, the plaintiff's right to such a hearing is mandated by the due process clause of the constitution. *Perry* v. *Sindermann,* 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972).

Relying upon *Rogan* v. *Board of Trustees for the State Colleges,* 178 Conn. 579, 424 A.2d 274 (1979), the defendant argues that sovereign immunity bars

this suit because the plaintiff has not joined his requests for injunctive relief and back pay to a prayer for a declaratory judgment.[2] The plaintiff does not urge us to abrogate the doctrine of sovereign immunity or to overrule *Rogan.* Instead, without success, he tries to characterize his suit as a request for a declaratory judgment.

In the event that a declaratory judgment action should decide that certain acts of state officials violated the constitution, we presume that the officials would accede to that decision. *Horton* v. *Meskill,* supra, 627. Simultaneous or subsequent injunctive relief would therefore be redundant; *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 41, 61 A.2d 89 (1948); because declaratory relief controls state activity no less completely than injunctive relief.

We continue to approve of the declaratory judgment as a proper and adaptable vehicle for relief in matters concerning the operations of government. Nevertheless, the view of declaratory relief which we expressed in *Horton* does not require the automatic dismissal of a suit which seeks to remedy an unconstitutional state act merely because the suit neglects to request declaratory relief. Such dismissals would trap the unwary. Furthermore, trial courts can avoid undue interference with governmental functions by tailoring injunctive relief and scrupulously weighing the equities. *Bahramian* v. *Papandrea,* 184 Conn. 1, 5, 440 A.2d 777 (1981); *Bassett* v. *Atwater,* 65 Conn. 355, 362, 32 A. 937 (1895). To afford the state an opportunity both to minimize disruption to government and to comply

---

[2] Because the trial court did not resolve the question of back pay, we need not consider whether the trial court could have ordered it.

voluntarily, a court may suspend the effective date of an injunction which it grants. *Gregory v. Crain,* 291 Ky. 194, 163 S.W.2d 289 (1942). Thus, we overrule *Rogan* to the extent it maintained that sovereign immunity invariably barred suits against the state for prospective injunctive relief of alleged constitutional violations unless such suits also requested declaratory relief.[3] In the present case the prospective injunctive relief granted by the trial court avoided undue interference with governmental functions and, thus, does not require reversal.

## II

The trial court's revised memorandum of decision states that on September 15, 1975, the board of trustees of regional community colleges[4] directed Dr. Cyril Charles, the executive director of regional community colleges, to appoint the plaintiff on a standard appointment for the year 1975–76.[5] The court found that this action by the defendant conferred tenure upon the plaintiff. The applicable

[3] We note two pre-*Rogan* cases, which approved injunctive relief against state officials although the plaintiff had made no prior or contemporaneous requests for declaratory relief. In *Weaver* v. *Ives,* 152 Conn. 586, 590–91, 210 A.2d 661 (1965), we held that the defense of sovereign immunity did not apply to a claim that the highway commissioner exceeded his statutory authority. The rationale of *Weaver* applies here with greater force, because the plaintiff claims a constitutional violation. In *Stock* v. *Cox,* 125 Conn. 405, 419, 6 A.2d 346 (1939), without discussing sovereign immunity, we held that a plaintiff could obtain injunctive relief against a state highway commissioner, who unconstitutionally took the plaintiff's property without paying compensation.

[4] The board of trustees may accept the tenure recommendation of the president or reach such other decision as may be in the best interest of the community college system. (Personnel Policies § 2-110.1 [c]).

[5] *"Recommendations:* Dr. Sentner should be re-employed at Manchester Community College on a Standard Appointment for the 1975–76 academic year."

personnel policies adopted by the board of trustees on November 16, 1970, provide that "[t]enure will be attained upon the completion of a maximum of six years of full-time service and the renewal of an individual's contract for the seventh year." Personnel Policies for the Professional Employees of the Regional Community College System § B I. B. 2. The plaintiff completed his sixth year of service at the end of the 1974–75 year. By directing that he receive a standard appointment for 1975–76, the defendant renewed his contract for the seventh year. The defendant concedes that the plaintiff completed seven years of service.

Nevertheless, the defendant argues that the trial court's conclusion that the plaintiff had achieved tenure was not reasonably supported by the evidence. The defendant bases his argument on the premise that § B I. B. 2. of the applicable 1970 tenure provisions only credits service at a particular college toward tenure at the college where it is rendered and not toward tenure at another college or within the whole community college system.[6] The 1970 provisions contain no explicit statement to that effect and do not exclude a contrary interpretation. The defendant points to no contextual or extrinsic evidence which precluded the trial court from adding the plaintiff's four years at Greater Hartford Community College to his three years at Manchester Community College. Therefore we cannot say that the trial court's conclusion was clearly erroneous.[7] Practice Book § 3060D; *Rodriguez* v.

[6] The 1975 personnel policies, which concededly do not apply to the plaintiff, state: "Tenure relates only to a college and not to the system of regional community colleges."

[7] Section B I. B. 2. provides an alternative basis for certain employees to achieve tenure "upon completion of five years of

*New Haven,* 183 Conn. 473, 476–77, 439 A.2d 421 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

## III

The defendant does not attack the trial court's conclusion that "the evidence before the defendant was insufficient for it to make a legally sustainable decision to dismiss the plaintiff." Instead, its last claim asserts that the trial court erred in ruling that the defendant improperly "dismissed" the plaintiff. This argument rests upon the premise that the plaintiff never attained tenure and that the dismissal procedures never applied to the plaintiff. In the Connecticut community colleges, "dismissal" is action by the board of trustees that terminates the appointment of a professional staff member for cause. (Personnel Policies § 2-50.) The board may dismiss tenured staff members for five specified causes.[8] The defendant does not argue that it had cause to dismiss the plaintiff; rather,

---

full-time service at an individual college and the renewal of contract for the sixth year." This provision militates against the interpretation advocated by the defendant.

[8] Personnel Policies, "Section 2-50.3 CAUSE FOR DISMISSAL. Dismissal of a tenured staff member, or of a staff member during the term of his/her appointment, may be for one or more of the following causes:

a. Incompetent or inadequate performance of responsibilities of the position

b. Persistent neglect of these responsibilities

c. Noncompliance with reasonable regulations or directives of the Board, the college, or the administrative unit to which the individual is attached

d. Conduct which impairs the effective performance of assigned responsibilities or which interferes with the work of the college or impairs the rights of students or of other staff members.

e. The use of fraud, collusion, or misrepresentation of a fact material to obtaining employment with the college and/or tenure or promotion therein."

it argues that it did not "dismiss" him. The defendant asserts that the plaintiff did not have tenure when his contract expired and that therefore the procedure to which the plaintiff objects was a "nonrenewal"[9] rather than a dismissal. The personnel policies definition of improper reasons for "nonrenewal"[10] affords less protection than the "dismissal" procedure. As already noted we have sustained the trial court on the tenure question. Therefore the defendant's dismissal procedures applied.

There is no error.

In this opinion PETERS, ARMENTANO and SHEA, Js., concurred.

ARTHUR H. HEALEY, J. (dissenting). I dissent. I am aware of the exception to the doctrine of sovereign immunity from suit in an action when the acts complained of are unconstitutional or unauthorized by statute. See *Horton* v. *Meskill,* 172 Conn. 615, 624, 376 A.2d 359 (1977); *Simmons* v. *Parizek,* 158 Conn. 304, 307, 259 A.2d 642 (1969); see also *Larson* v. *Domestic & Foreign Commerce Corporation,* 337 U.S. 682, 690, 691, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949). In *Horton* v. *Meskill,* supra, we quoted with approval language that "the government cannot

---

[9] Personnel Policies, "Section 2-60 NONRENEWAL OF STANDARD APPOINTMENTS. Section 2-60.1 Definition. Nonrenewal is the decision by the president not to recommend renewal of a standard appointment. Nonrenewal is subject to administrative review."

[10] Personnel Policies, "Section 2-60.2 . . . . An improper reason is defined as either (1) A reason that is arbitrary or capricious. An arbitrary or capricious reason is one which is unrelated to the educational process or to working relationships within the educational institution; which is trivial; or which has insufficient basis in fact. (2) A reason that infringes upon specific constitutional or statutory rights of the individual or upon academic freedom, as the latter is defined within these policies."

justifiably claim interference with its functions when the acts complained of are unconstitutional or unauthorized by statute." *Horton* v. *Meskill,* supra, quoting Block, "Suits against Government Officers and the Sovereign Immunity Doctrine," 59 Harv. L. Rev. 1060, 1081 (1946).

In recognizing the distinction between sovereign immunity from suit and sovereign immunity from liability; see *Bergner* v. *State,* 144 Conn. 282, 285–87, 130 A.2d 293 (1957); we have often in the past considered the merits of appeals from judgments in *declaratory judgment* actions when state officials have been parties. See *Horton* v. *Meskill,* supra, 625–26, and the eleven Connecticut Supreme Court cases so cited as the occasion for such review by us. In *Horton,* we specifically said: "The declaratory judgment procedure in Connecticut as provided by § 52-29 of the General Statutes and §§ 307–313 of the Practice Book [now §§ 388–394 of the 1978 Practice Book] is peculiarly well adapted to the judicial determination of controversies concerning constitutional rights and . . . the constitutionality of state legislative or executive action." *Horton* v. *Meskill,* supra, 626. In that case, we also said: "The [declaratory judgment] procedure has the distinct advantage of affording to the court in granting any relief consequential to its determination of rights the opportunity of tailoring that relief to the particular circumstances." Id., 627. See *Textron, Inc.* v. *Wood,* 167 Conn. 334, 340–42, 355 A.2d 307 (1974).

After *Horton,* this court handed down its decision in *Rogan* v. *Board of Trustees for the State Colleges,* 178 Conn. 579, 424 A.2d 274 (1979). In *Rogan,* the plaintiffs sought mandatory injunctive relief

against the defendants; the plaintiff does the same here. In *Rogan,* the plaintiffs did not seek declaratory relief, nor does the plaintiff here.[1] The plaintiffs in *Rogan* disputed the termination of their employment at a "laboratory school" at a state college in part on due process grounds.[2] In *Rogan,* we held that that action for prospective injunctive relief against alleged constitutional violations would not lie against the state because the plaintiffs had not sought it in the context of declaratory judgment relief. See *Rogan* v. *Board of Trustees for the State Colleges,* supra. In so holding, we reaffirmed the principles of *Horton* (and *Textron, Inc.* v. *Wood,* supra) set out above.

While the majority does not decide the issue of back pay, it sustains the trial court's order reinstating the plaintiff with tenure. This decision, by overruling not only the holding of *Rogan,* but also portions of *Horton* and *Textron,* has the effect of declaring the rights of the parties, and also of controlling the activities of the defendant board, and thus the state, in its administration of the educational system at Manchester Community College.

[1] In this case, the plaintiff seeks temporary and permanent injunctive relief reinstating him with full back pay and benefits, an order directing the defendant to continue his employment with tenure at Manchester Community College, and such "other and further relief as to equity may pertain."

In his brief the plaintiff states that he "has requested certain affirmative relief. However, [the] plaintiff's suit could also be characterized as a request for a declaratory judgment." There appears to be no question that he has not complied with any of our requisites for seeking a declaratory judgment, which is a special proceeding. General Statutes § 52-29; see Practice Book §§ 389–391. See *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 616, 363 A.2d 1038 (1975).

[2] In *Rogan* v. *Board of Trustees for the State Colleges,* 178 Conn. 579, 424 A.2d 274 (1979), the plaintiffs also sought damages by way of any lost wages, costs and counsel fees.

See *Rogan* v. *Board of Trustees for the State Colleges,* supra. This relief is "coercive" and has been awarded unattended by the proper vehicle, i.e., declaratory judgment relief, whose vitality and adaptability to matters concerning the operations of government, such as those presented on this appeal, has been given our strong approbation twice in the very recent past.[3] I submit that no compelling reason has been presented by the majority for in effect rejecting such approval in this case.[4]

Therefore, I dissent, would find error, and would direct judgment for the defendant.

---

[3] The majority observes that "[t]o afford the state an opportunity both to minimize disruption to government and to comply voluntarily, a court may suspend the effective date of an injunction which it grants." The defendant was given no time or opportunity in this case to comply voluntarily. There was no suspension of the effective date of the injunction which was clearly mandatory. The degree of disruption occasioned by this mandatory relief cannot be evaluated, but whatever this degree, because of the immediacy of the mandatory relief ordered, we do know that the defendant is left with no alternative but to comply forthwith.

[4] In a footnote, the majority cites to *Weaver* v. *Ives,* 152 Conn. 586, 210 A.2d 661 (1965), and *Stock* v. *Cox,* 125 Conn. 405, 6 A.2d 346 (1939), for the proposition that prior to *Rogan* v. *Board of Trustees for the State Colleges,* 178 Conn. 579, 424 A.2d 274 (1979), this court "approved injunctive relief against state officials although the plaintiff had made no prior or contemporaneous requests for declaratory relief." I do not think that those cases stand for the claimed proposition. In *Weaver* v. *Ives,* supra, this court held that the defense of sovereign immunity was inapplicable because the plaintiffs claimed that the highway commissioner was exceeding his statutory authority. In *Weaver,* we reasoned that "[p]revious decisions of this court have carefully distinguished situations in which the official acted within the limitations of his authority from those in which official duty was transcended. *Newton* v. *Hamden,* 79 Conn. 237, 241, 64 A. 229 [1906]; *Stock* v. *Cox,* 125 Conn. 405, 417, 6 A.2d 346 [1939]; *Anselmo* v. *Cox,* 135 Conn. 78, 82, 60 A.2d 767, cert. denied, 335 U.S. 859, 69 S. Ct. 132, 93 L. Ed. 405 [1948]; *Winchester* v. *Cox,* [129 Conn. 106, 114, 26 A.2d 592 (1942)]. The principle that the sovereign cannot be sued without its consent does not prohibit a suit for injunctive relief against one of its officers who is acting without authority. *Work* v. *Louisiana,* 269 U.S. 250,

254, 46 S. Ct. 92, 70 L. Ed. 259 [1925]; *Colorado* v. *Toll*, 268 U.S. 228, 230, 45 S. Ct. 505, 69 L. Ed. 927 [1925]; *Payne* v. *Central P. Ry. Co.*, 255 U.S. 228, 238, 41 S. Ct. 314, 65 L. Ed. 598 [1921]; *Yale College* v. *Sanger*, 62 Fed. 177, 186 (D. Conn. [1894]); 28 Am. Jur., Injunctions § 177; 49 Am. Jur., States, Territories, and Dependencies § 94. Since the gravamen of the plaintiffs' complaint is that the defendant is acting illegally and in excess of his statutory authority, the action is not to be treated as one against the state requiring the consent of the state before it can be maintained." *Weaver* v. *Ives*, supra, 590–91.

*Stock* v. *Cox*, supra, which is cited with approval in *Weaver*, involves a similar claim that the highway commissioner was exceeding his statutory authority. The issue of sovereign immunity is neither mentioned nor discussed in *Stock*.