[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
In this case the plaintiff alleges a violation of the Americans with Disabilities Act (ADA) 42 U.S.C. § et. seq., the Connecticut Constitution Amendment XXI and Connecticut General Statute § 17a-549. The plaintiff alleges that the state bar examining committee has violated the A.D.A. by denying him admission to the practice of law purportedly because he has a psychological impairment. The defendants are the Superior Court, the Connecticut Bar Examining Committee, and R. David Stamm, Administrative Director of the committee. The complaint seeks injunctive relief and damages, punitive damages, costs, and attorney's fees.
The defendant Superior Court and the other named defendants have not sought to dismiss the lawsuit as it relates to the plaintiff's claim for injunctive relief. They have filed a motion to dismiss those claims relating to damages, costs, punitive damages and attorney's fees. The claim is made that the court has no jurisdiction to grant these particular types of relief because of judicial, legislative and sovereign immunity. A motion to dismiss tests the courts personal and subject matter jurisdiction. For the purposes of this motion both sides assume the court has jurisdiction to grant injunctive relief so I am not quite sure how it could be said that the court doesn't have subject matter jurisdiction merely because particular types of relief would be barred. CT Page 9552
A motion to strike, P.B. § 152 P.B.(2), would appear to be the appropriate vehicle to have raised the claims now being made by the defendants. Procedurally however, I don't see any reason why this motion couldn't be treated as a motion to strike.Gurliacci v Mayer 218 Conn. 531, 544 (1991) doesn't explicitly say the court can't take this course of action. In any event in fairness to the plaintiff it should be stated that in their brief they explicitly raised the propriety of hearing this matter as a motion to dismiss and if the court is incorrect in deciding this motion their filing of a brief and oral argument on the merits should not in themselves be considered a waiver to their procedural objections, also see McCutcheon Burr, Inc. v Berman218 Conn. 512, 527 (1991).
(1) Judicial Immunity
If the federal government is to implement the Fourteenth Amendment through the passage of important ameliorative legislation like the A.D.A. it would certainly appear true that no state official or entity including the judicial apparatus could deny injunctive relief authorized by such federal legislation. If injunctive relief is granted failure to obey any court order in that regard could under appropriate circumstances subject non-complying state officials to appropriate contempt procedures. All of this concerns attempts by litigants for whose benefit legislation was passed to secure prospective relief or to remove bars to accomplishing the goals the statute seeks to guarantee.
The issue of damages, punitive damages and attorney's fees is a different matter since it involves imposing monetary burdens on state officials and entities for past actions found after the fact to be violative of federal law. At least in situations where a state doesn't allow such relief in similar litigation and is not singling out litigation to enforce federal rights, it is appropriate to raise the various immunity defenses the defendants now seek to raise. The net result of all this is that although it may be true that courts that have considered the question — as the plaintiff notes — have found Title II of the ADA applicable to state bar licensing committees that doesn't necessarily settle the question of the right to damages. In D'Amico v N.Y. StateBoard of Law Examiners 813 F. Sup. 217 (W.D.N.Y., 1993) the court CT Page 9553 applied the ADA but the only issue before the court was that of injunctive relief — the jurisdiction of the court to grant that type of relief wasn't even before the court nor of course was the question as to whether the court could grant damages, costs, punitive damages or attorney's fees before the court; also seePetition of Rubenstein 637 A.2d 1131 (Del, 1994) where plaintiff petitioned for order directing board of bar examiners to issue certificate that she was qualified for admission to bar and based her petition on the A.D.A.
Spring v Constantino 168 Conn. 563, 565 (1975) as the defendants note sets out in broad language the doctrine of judicial immunity. That case says the doctrine was designed to promote principled and fearless decision making. Pierson v Ray386 U.S. 547, 553 (1967), cited by the Spring court, says this doctrine was firmly established in common law and gives judges immunity from liability for damages committed within their judicial jurisdiction; judges must "exercise their functions with independence and without fear of consequences."
The plaintiff does not take issue with these broad principles but rather says the doctrine of judicial immunity just does not apply to the actions taken by the defendants which form the basis of this suit because they are not "judicial acts" entitled to immunity. The plaintiff claims that what is involved here are "administrative acts". Merely because certain administrative activity is essential to the functioning of the court that does not make them ipso facto judicial acts protecting the actors form suit by the doctrine of judicial immunity.
In other words whether an act is judicial is not determined by the character of the person taking the act but by the nature of the act taken, Forrester v White 484 U.S. 219, 225 (1988) (state judge didn't have absolute immunity from damages under 47 U.S.C. § 1983 for demoting and dismissing probation officer), ExParte Virginia 100 U.S. 339 (1880) (no judicial immunity for state judge who excluded black men from jury duty; "The duty of selecting jurors might as well have been committed to a private person as to one holding the office of a judge . . . that the jurors are selected for a court make(s) no difference . . . So are . . . sheriffs . . . ." Id. page 348.
Following this reasoning the Federal Supreme Court has refused to extend the doctrine of judicial immunity to judges who promulgate codes of conduct for attorneys, Supreme Court ofCT Page 9554Virginia v. Consumers Union of U.S. Inc. 446 U.S. 719, 731 (1980).
The plaintiff characterizes the federal supreme court's activity in this area as creating a "functional immunity analysis" which it is claimed the State Supreme Court applied inRosenthal v. State Bar Examining Committee 116 Conn. 403 (1933) where the petitioner claimed that procedures relating to the admission of attorneys to the bar were administrative not adjudicative. In that case the petitioner Rosenthal claimed among other things that the court could not delegate to the bar examining committee the power to determine in which law school the petitioner should be required to study before taking the bar exam. The court said: "proceedings for the admission of attorneys are not actions or suits at law; they are in the nature of investigations by the courts or their representatives to determine whether particular candidates are qualified to become its officers . . . . Such an investigation . . . is really administrative in its nature, "Id. pp. 415-416.
The plaintiff concludes his argument by saying his allegations revolve around the defendants' failure to make reasonable modifications to its policies, procedures, and practices regarding the admission to the bar to attorneys with mental deficiencies. The ADA requires entities like the Bar Examining Committee to reasonably modify its policies and practices and carrying out that duty doesn't involve a judicial act.
An issue cannot be decided, however, by the way a question concerning its application is framed. The two questions before the court are:
 (1) Are the acts or failures to act surrounding the plaintiff's application for admission to the bar judicial acts or administrative acts?
 (2) If such acts are in fact judicial acts should judicial immunity extend only to the Superior Court or should it also be extended to the Bar Examining Committee and its Administrative Director?
 A.
It is true that the Federal Supreme Court in Forrester vWhite supra said that in drawing a line between judicial acts for CT Page 9555 which immunity is appropriate and administrative acts for which it is not "a functional analysis is appropriate, i.e. it is the nature of the function performed and not the identity of the actor that is important, "Myers v Futi 720 F. Sup. 1234, 1240
(E.D. La, 1989). It has also been said that factors to be used to determine whether the act is judicial are (i) whether the precise act complained of is a normal judicial function (ii) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers (iii) whether the controversy centered around a case pending before the court, and (iv) whether the acts arose directly out of a visit to the judge in his or her official capacity, Adams v. McIlhany 764 F.2d 294, 297 (CA5, 1985).
These four criteria are only a tool used in Federal cases to decide whether certain types of activity — such as demoting or firing a probation officer as in Forrester should be regarded as a judicial act. The existence of such a test to address the scope of judicial immunity in other contexts hasn't prevented the development of a general rule, to which I could find no exception, that judicial functions or acts entitled to absolute immunity include denying an application for admission to a state bar. These decisions pre and post date Forrester; Childs vReynoldson, 777 F.2d 1305, 1306 (CA8, 1985), La Nave v MinnesotaSupreme Court 915 F.2d 386, 387 (CA8, 1990) (claim of Fifth and Fourteenth Amendment violations), Sparks v Character and FitnessCommittee of Kentucky 859 F.2d 428, 432 et. seq (CA6, 1988 (42 U.S.C. § 1983 complaint).
The discussion should begin by noting that our Supreme Court has said that: "Fixing the qualifications for, as well as admitting persons to, the practice of law in this state has ever been an exercise of judicial power", Herberger v Clark 148 Conn. 177,185 (1961). In a later case the court said that it agreed with the bar examining committee that its "principle function of determining whether an applicant is qualified for admission to the bar is quite analogous to adjudication" Connecticut BarExamining' Committee v FOIC 209 Conn. 204, 209 (1988).[1] The court in Sparks v Character and Fitness Committee supra engaged in an extensive and compelling analysis of Forrester and how it bore on the question now before the court, see especially859 F.2d at pp. 433-434. The court notes that hiring and firing administrative court staff as in Forrester are functions that merely happen to be performed in some states by judges. But it has historically been the function of the judiciary in Kentucky (as well as in Connecticut) to determine eligibility for the bar. CT Page 9556 In Forrester the Sparks court notes the Supreme Court cited the availability of an appeal process as an important reason for granting judicial immunity for judicial acts. Not only do the regulations of the defendant committee here provide for a petition for reconsideration where there has been denial of admission to the bar, in Connecticut: "Questions of law arising upon proceedings for admission to the bar are properly presented in a petition to the court", Herberger v. Clark 148 Conn. at page 182, cf. In re Hall 50 Conn. 131 (1882) and there is nothing to indicate injunctive relief would not be available in the appropriate case.
Forrester also cited Bradley v Fisher 80 U.S. 335 (1871) which accorded judicial immunity to the debarment of an attorney. As the Sparks court said:
 If the action of a court in disbarring an attorney is a judicial act for which immunity attaches, in part because it invokes a power possessed by all courts which have authority to admit attorneys to practice, it follows inexorably that in exercising the power it has to determine who shall be admitted to practice, the Kentucky Supreme Court performs a judicial act for which immunity attaches", Id. page 433
Finally Sparks gives a broad reading to the functional analysis test set down in Forrester when it says:
 Some functions performed by courts are so inherently related to the essential functioning of the courts as to be traditionally regarded as judicial act. Determining the composition of the bar is just such an historic and traditional function. The establishment of criteria for determining the intellectual competence, academic preparedness, and moral fitness of persons who petition the court for the privilege of undertaking the confidential trust of serving the court as one of its professional officers has always been a function confined to the courts themselves. It has been universally CT Page 9557 thought that the courts are best equipped to understand the requirements for adequate representation of lay persons before the courts and to identify the qualifications of those who would undertake such representation as the courts' officers. That inherent expertise, and the exercise of the power to apply it in admitting and rejecting candidates to the practice of law, functions rooted in tradition and history, are arguably as fundamental to the sound functioning of the judiciary as is the task of resolving the disputes such officers present. Id. at page 434
If that isn't the espousal of a functional test in compliance with the reasoning of Forrester I don't know what would be. I find that in this case there have been judicial acts entitling the Superior Court to immunity. The next question becomes should that immunity be extended to the bar examining committee and its administrative director.
 B.
In Connecticut Bar Examining Committee v FOIC 209 Conn. at p. 209, the court did refer to the principal function of the committee as to qualification for admission to the bar to be adjudicative. Since the committee in making decisions regarding admission acts as a representative of the court and "an arm of the court" Herberger v. Clark 148 Conn. at page 182, it is difficult to see how judicial immunity would not extend to the committee and its director. The grant of judicial immunity to the Superior Court alone under such circumstances would be a pointless exercise considering how the Superior Court has exercised its power in this area. As said in Rosenthal at 116 Conn. page 414 . . . "from the earliest times, to the present the admission of unqualified persons into the practice of the profession, the courts have employed the members of the bar for the purpose of ascertaining the character and qualifications of those applying for membership."
The acts complained of in this case were performed by the non-judicial defendants in compliance with their work for the court which has the power to regulate admission to the bar. Their CT Page 9558 actions can't be separated from that of the court. Public policy requires absolute immunity for all persons who are part of the judicial process and especially for those who act directly as agents of the court, cf Briscoe v Laltue 460 U.S. 325, 335 (1983), also see Hoover v Runwin 466 U.S. 558, 572 (1984), see the discussion in Sparks v Character and Fitness Committee at859 F.2d at pp. 430-431, also see Childs v Reynoldson 777 F.2d at page 1306, LaNave v Minnesota Supreme Court 915 F.2d at page 387.
I believe the doctrine of judicial immunity does protect each of the defendants from the claims for damages, punitive damages, costs and attorney's fees.
(2) Legislative Immunity
All the defendants press their motion on the grounds of absolute legislative immunity. The basis of the defense is the characterization of the counts of the complaint as being based on the defendants alleged "failure to adopt a rule on conditional licensing", (page 7 of the Superior Court brief.) But such a claim forms the exclusive basis for a theory of liability as to only the Second and Fourth Count.
In any event Justice Frankfurter set forth the rationale behind the doctrine in Tenney v. Brandhove 341 U.S. 367, 377 (1951)
 Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distraction of a trial upon a conclusion of the pleader or to the hazard of a judgment against them based upon a jury's speculation as to motives.
The doctrine thus is meant to protect individuals "acting within the bounds of their legislative duties not the governing bodies on which they serve", Herbst v. Daukas 701 F. Sup. 964 (D. Conn. 1988), Minton v. St. Bernard Parish School Board 803 F.2d 129,133 (CA5, 1986). CT Page 9559
The Superior Court and the State Bar Committee are entities; any judgment rendered against either one of these defendants as entities wouldn't be collectible against individual judges or members of the committee and these individuals wouldn't have to go through the personal cost and burden of defending themselves. Extending legislative immunity to entities such as these would not foster the purposes of the doctrine of legislative immunity. In Crosetto v. Heffernan 771 F. Sup. 224 (ND see, 1990) lawyers brought suit claiming certain bar association regulations were unconstitutional. They sued the seven Justices of the State Supreme Court, the State Bar and its executive director apparently in his individual capacity. The court held with agreement of the parties that the doctrine of legislative immunity could be relied upon by all the defendants. I agree withCrossetto insofar as it applies this doctrine to the suit against the director of the State Bar and the individual justices. But I don't believe the doctrine should apply in favor of an entity like the State Bar Committee or the Superior Court.
Can the director of the examining committee, Mr. Stamm, rely on the doctrine of legislative immunity? It is true as the plaintiff says that the doctrine of legislative immunity can be raised by a person claiming to be acting in a legislative capacity only if he is being sued in an individual as opposed to an official capacity Herbst v. Daukas supra at 701 F. Sup. 968.
All the counts of this complaint explicitly state that Mr. Stamm is being sued in his "official" capacity. The prayer for relief asks various types of damages and costs generally and against each defendant, presumably also against Mr. Stamm.
However as made clear in Kentucky v Graham 473 U.S. 159 (1985) and Herbst v. Daukas supra at p. 968 "official capacity suits are treated as suits against the governmental entity itself". As the court goes on to say in Kentucky v. Graham at page 166 regarding official capacity suits:
 It is not a suit against the official personally, for the real party in interest is the entity. Thus while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official CT Page 9560 capacity suit must look to the government entity itself.
Since the plaintiff claims to be suing Stamm in his official capacity status he cannot rely on the specific doctrine of legislative immunity although, of course, he may rely on judicial and sovereign immunity, cf Herbst v. Daukas 701 F. Supp at 909, cfKentucky v Graham at 473 U.S. pp. 160-67. And any damage claim would be limited as indicated above. However, since I must read the allegations of the complaint in a manner most favorable to the plaintiff I cannot grant the motion as to Stamm based on a claim that it would violate his right to absolute legislative immunity. The language of the complaint can be read as not violating the principles regarding damages in so-called official capacity suits as set forth in Kentucky v Graham supra and any damage recovery would be limited in terms of the reasoning of that case if damages were otherwise deemed to be recoverable.
In conclusion I do not believe that doctrine of legislative immunity would provide a basis to strike any of the claims for damages or to dismiss such claims.
(3) Sovereign Immunity
Each of the defendants has the right to defend on the basis of sovereign immunity. The Superior Court and the State Bar Examining Committee are state entities and since Stamm is sued in his official capacity he can raise any defense held by the state entity such as sovereign immunity Healy v Town of Pembroke Park643 F. Sup. 1208, 1213 (SD Fla., 1986).
(a) ADA
I agree with the plaintiff that the ADA abrogates the state's Eleventh Amendment sovereign immunity. It is difficult to see how the federal government could enforce the broad purposes set out in section 5 of the Fourteenth Amendment without recognizing the right of Congress to abrogate the Eleventh Amendment sovereign immunity of the state. Atascadero State Hospital v Scanlon 473 U.S. 234,238 held Congress can pass legislation explicitly abrogating that immunity and a reading of the ADA at § 42 U.S.C. § 12202
CT Page 9561 indicates that congress did so with regard to this act. The act reads:
 A state shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in federal or state court of competent jurisdiction for a violation of this Act. In any action against a state for a violation of the requirement of this Act, remedies (including remedies at both law and equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a state.
The legislative history cited by the plaintiff also supports the position that in passing the ADA Congress intended to abrogate the Eleventh Amendment, see House Comm. on the Judiciary, H.R. Rep. No. C185 (111), 101st Cong.2d Sess. at 72 (1990).
Claim Under Connecticut Constitution
The third and fourth counts raise claims under the state constitution. The plaintiff claims that each of the defendants by their acts and failures to act violated the guarantee of equal protection of the laws under Amendment XII to the Connecticut Constitution.
In Doe v Heintz 204 Conn. 17 (1987) a suit was brought against the defendant Commissioner of Income Maintenance and others asking for an injunction and other relief. The trial court gave judgment to the plaintiffs and awarded costs and attorney's fees. The court said these monetary awards were inappropriate under the doctrine of sovereign immunity saying that: "In the absence of legislative authority . . . we have declined to permit any monetary award against the state or its officials" id. p. 32. The plaintiffs' judgment for injunctive relief was not disturbed but the court ordered the monetary awards be dismissed. The court did not address the claim as to whether the right to judicial redress set forth in Article 10 should be held to override the defense of sovereign immunity because the plaintiffs were held not to have exhausted administrative remedies by presenting their CT Page 9562 claim to the claims commissioner under the general statutes. See also Baker v Ives 162 Conn. 295, 298 (1972) setting forth the traditional rule that monetary awards against the state are not allowed unless appropriate legislation authorizes it.
But the plaintiff correctly cites Horton v Meskill 172 Conn. 615
(1977) and Sentner v Board of Trustees 184 Conn. 369 (1981) for the proposition that the doctrine of sovereign immunity has and must be modified in a democratic state since the source of the doctrine is the constitution. Therefore "the government cannot justifiably claim interference with its functions when the acts complained of are unconstitutional or unauthorized by statute", Horton v Meskill 172 Conn. at p. 624, Sentner v Boardof Trustees 184 Conn. 339 at p. 343.
The important question then becomes how should this doctrine be modified or more exactly what court proceedings or claims for relief are appropriate or viable given this necessary relaxation of the doctrine of sovereign immunity? Horton explicitly waived the doctrine where the action was one for declaratory relief id. p. 618 and recognized "the distinction between sovereign immunity from suit and sovereign immunity from liability" id. p. 625.Sentner permitted' an action for injunctive relief and held that because the relief requested didn't involve undue interference with government sovereign immunity wouldn't bar the action id. p. 344. Interestingly the court did not decide the claim for back pay which this professor who said his tenure rights were violated also raised, see dissent p. 350.
In other words I don't believe Horton and Sentner authorize awards of damages even where it is claimed state officials acted so as to violate the constitution or in a way unauthorized by statute at least where the rights in question can be vindicated by injunctive or declaratory judgment relief. There may be a case where the latter isn't so but nothing has been presented to the court to indicate that this is so here. The above seems to be a reasonable way to reconcile the broad statements in Baker v Ives
supra barring monetary relief with the holdings in Horton v Meskill
supra and Sentner v Board of Trustees.
I believe claims for damages are barred by the doctrine of sovereign immunity even when there is a claim for a violation of the constitution at least under the allegations made in these pleadings. CT Page 9563
Claims Made Under § 17a-549 of the General Statutes
I agree with the plaintiff that § 17a-550 constitutes a waiver by the legislature of sovereign immunity as to claims made under § 17a-549 of the general statutes. I am not as sure as he is however, that Mahoney v Lensink 213 Conn. 548 (1990) provides a basis for that result. Mahoney involved an action for violation of patient's rights under then § 17-206(b) and (c) and the court interpreted § 17-206(k), now § 17a-550 on the question whether an action for civil damages was permissible against the state. The plaintiff patient had been confined to a state hospital. The court looked to the legislative history and determined the legislature intended to waive sovereign immunity as it specifically dealt with the issue of violation of patients' rights. This analysis was necessary since the universe of prospective defendants who might have a claim for violation for their rights as patients could include state and non-state facilities, and a restrictive reading of the remedies section could be held not to encompass an explicit waiver by the legislature of sovereign immunity when state hospitals were being sued under these specific patient rights statutes. Thus the ruling in Mahoney is not authority for a finding of a waiver of sovereign immunity for actions brought under other statutory subsections.
But I do find a waiver of statutory immunity because I believe § 17a-549 and § 17a-550 have to be read together. Section 17a-549 says that "no person shall be denied civil service rank, and license or permit, including a professional license . . . solely because of a present or past history of mental disorder . . ". This case involves the issuance of a "professional license". The only people or entities that issue such licenses are the state or its officials. Thus when the remedy section, § 17a-550 provides for "a civil action for damages" for violations of §§ 17a-540 to 549 a waiver should be found.
Conclusion
I do find the claims for damages, attorney's fees, punitive damages are barred by the doctrine of judicial immunity as to all counts. But in order to write a complete opinion I also have concluded that sovereign immunity can only be raised as a defense under the claim for violation of constitutional rights. I also believe the doctrine of legislative immunity cannot be relied CT Page 9564 upon by the defendants Superior Court and the Bar Examining Committee but does serve to limit the type of recovery allowed against the executive director of the committee. However, the ruling on the doctrine of judicial immunity would in any event prevent a recovery against Mr. Stamm even though the action is brought against him in his official capacity since any such recovery is in effect a recovery against the state and I conclude the doctrine of judicial immunity bars such a recovery.
However, this motion presents itself in an unusual procedural context. It is styled as a motion to dismiss. The parties don't contest the right in this action to ask for injunctive relief so the court has subject matter jurisdiction for that purpose as to all the claims being made. That being the case query as to whether this motion is in effect a motion to strike. If that is the case, the plaintiff could plead over if he believes in light of this ruling an exception to the doctrine of judicial immunity or an avoidance of the application of the doctrine could properly be plead.