[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
This is a one-count revised complaint seeking a declaratory judgment and various forms of injunctive relief against the defendants, Aaron Ment, in his official capacity as chief court administrator, and Linda D'Amario Rossi, in her official capacity as commissioner of the department of children and families (DCF).
The named plaintiff, Pamela B., brings this action on behalf of herself and a class of persons consisting of all parents in Connecticut whose children have been or may be seized by DCF, any who have been or may be denied their right to challenge the state's temporary custody in a timely evidentiary hearing. Plaintiff's motion for class certification is now pending. Her revised complaint alleges the following facts.
On August 8, 1995, DCF seized Jonathan, the plaintiff's twenty-three-month old son, and placed him on 96-hour hold pursuant to General Statutes § 46b-129 (b). On August 11, 1995, DCF filed a neglect petition and applied to the superior court for juvenile matters for an order of temporary custody (OTC) regarding Jonathan which the court granted ex parte based upon documents submitted by DCF.
Upon issuing the order, on August 11, 1995, the court scheduled a "ten-day hearing" on the OTC for August 21, 1995, as required by General Statutes § 46b-129 (b), and on that date the plaintiff appeared in court, with counsel, to contest the OTC. Over the plaintiff's objection, the court continued the hearing until March 4 and March 8, 1996. The CT Page 1224 court also scheduled an evidentiary hearing on the underlying neglect petition for those same dates and consolidated the two hearings. The OTC remains in force and will continue to remain in force until the underlying neglect petition has been fully adjudicated.
The plaintiff alleges that the continuance of "ten-day hearings" and the consolidation of OTC hearings and neglect petitions are common throughout the state. She alleges further that these practices are the result of an increase in the number of OTC applications, unreasonably crowded juvenile dockets, insufficient staffing of the juvenile courts and inadequate allocation of judicial resources, all of which conditions are caused by the defendants' failure to appropriately perform their duties.
The plaintiff claims that the defendants have denied her fundamental due process in violation of thefourteenth amendment of the federal constitution. She claims further that the defendants have violated article first, section ten of the state constitution, which provides for remedy without delay. Finally, the plaintiff claims that the defendants' actions are subject to redress under 42 U.S.C. § 1983.
The plaintiff seeks a declaratory judgment that the defendants' practices violate General Statutes § 46b-129 and the state and federal constitutions, and three forms of injunctive relief. First, the plaintiff seeks an order directing defendant Ment to establish procedures for all cases in which an OTC is issued ex parte, including but not limited to immediate appointment of counsel for parents. Second, the plaintiff seeks an order directing defendant Ment to allocate sufficient resources to the superior court for juvenile matters to eliminate the unlawful practices described in the complaint. Third, the plaintiff seeks an order directing defendant Rossi to restore to parental custody any child whose parents are subject to the unlawful practices described in the complaint.
On June 6, 1996, the defendants filed this motion to strike the plaintiff's prayers for injunctive relief, along with a supporting memorandum of law. On August 20, 1996, the plaintiff objected to the motion to strike and filed a memorandum of law in opposition. CT Page 1225
 I
A motion to strike a prayer for relief is proper and should prevail if, "assuming the truth of the allegations in the complaint, the relief sought could not be legally awarded to the plaintiff." Kavarco v. T.J.E., Inc.,2 Conn. App. 294, 298 n. 4 (1984).
 II
The defendants move to strike the plaintiff's request for an order directing defendant Ment to establish procedures for all ex parte OTCs including, but not limited to, immediate appointment of counsel for parents, claiming that Ment has no authority to establish new procedures. The plaintiff contends that pursuant to General Statutes §51-5a(a), Ment has the authority to establish procedures that "fill the gaps" in existing rules.
"The rules of practice for the Superior Court are adopted by the judges of the Superior Court in the exercise of their inherent rule-making authority." Fattibeane v.Kealey, 18 Conn. App. 244, 356 (1989). General Statutes § 51-14a(a)[1] codifies this inherent authority and General Statutes § 51-14a(c)[2] and Practice Book § 7[3] provide the procedure for the promulgation and adoption of those rules. These procedures include notice, public hearings and publication in the Connecticut Law Journal.
Accordingly, "no single judge has the authority to make a rule or change one; and the exercise of this power requires not only the necessary consultation and consent of the judges but, in the case of the Circuit Court[4] rules, notice, public hearing, and publication as well." State v.Davis, 24 Conn. Sup. 22, 25, cert. denied, 150 Conn. 709
(1962). See also Fattibeane v. Kealey, supra,18 Conn. App. 356 (noting Practice Book § 7 and holding that there is "no authority permitting an individual judge or judicial district simply to adopt a particular rule of federal civil procedure"). It is clear that defendant Ment, a Superior Court judge, does not have the authority to create new rules of procedure for OTCs.
Nevertheless, the plaintiff argues that pursuant to General Statutes § 51-5a, Ment, as the chief court CT Page 1226 administrator, has the authority to issue orders he deems necessary to fill the gaps in the Practice Book provisions. This claim as applicable to this case is without merit.
General Statutes § 51-5a(a) provides, in pertinent part, that "the chief court administrator: (1) Shall be the administrative director of the judicial department and shall be responsible for the efficient operation of the department, the prompt disposition of cases and the prompt and proper administration of judicial business. . . ." The Connecticut Supreme Court has interpreted this statute as "speak[ing] mainly to the accounting, personnel, scheduling and record-keeping activities of the Judicial Department. It does not purport to extend delegation of legislative authority to the rules of practice." Rules Committee of theSuperior Court v. FOIC, 192 Conn. 234, 246 (1984). Ment, as the chief court administrator, does not have the authority to create new rules of practice or modify existing rules.
Practice Book § 1041.1 governs the procedure for OTCs, and § 1041.1(2)[5] requires that the order contain a statement of the respondent's right to counsel and to remain silent. Additionally, Practice Book § 1048.1(2)[6] provides the guidelines for the appointment of counsel for the child's parents in all proceedings.
For defendant Ment to implement the procedures requested by the plaintiff, he would have to create new rules of practice or modify the existing rules, and this he does not have the power to do. Accordingly, even if the allegations of the plaintiff's complaint are true, this court cannot grant the relief requested, and this request for an order directing defendant Ment to establish procedures for all ex parte OTCs is insufficient at law.
 III
The defendants move to strike the plaintiff's request for an order directing defendant Ment to allocate sufficient resources to the juvenile courts, because the court is prohibited by sovereign immunity from granting it. The plaintiff contends that sovereign immunity does not bar this relief because she alleges a violation of a fundamental constitutional right. CT Page 1227
It is well settled in Connecticut that the state cannot be sued without its consent and that since the state acts only through its officers and agents, a suit against an officer concerning a matter in which he represents the state is, in effect, a suit against the state. University ofConnecticut Chapter, AAUP v. Governor, 200 Conn. 386, 388
(1986). Nevertheless, "sovereign immunity does not bar suits against state officials acting in excess of their statutory authority . . . or in violation of constitutional rights." Savage v. Aronson, 214 Conn. 256, 264 (1990). To same effect see Tamm v. Burns, 222 Conn. 280, 283 (1992).
Originally, the constitutional exception to sovereign immunity applied only to requests for declaratory judgments.Horton v. Meskill, 172 Conn. 615, 628 (1977); Textron Inc.,v. Wood, 167 Conn. 334, 340 (1974). "The authority ofHorton and Textron . . . does not extend beyond suits for declaratory judgments alleging unconstitutional activity on the part of state officials." Rogan v. Board of Trustees,178 Conn. 579, 585 (1979), overruled, 184 Conn. 339439 A.2d 1033 (1984). The court in Rogan held that sovereign immunity barred the plaintiffs' suit against the state seeking an injunction and damages. Id., 586.
The Rogan holding was overruled, in part, by Sentner v.Board of Trustees, 184 Conn. 339, 1033 (1981), which approved the declaratory judgment as a proper and adaptable vehicle in matters concerning the operations of government. "Nevertheless, the view of declaratory relief we expressed in Horton does not require the automatic dismissal of a suit which seeks to remedy an unconstitutional state act merely because the suit neglects to request declaratory relief. . . . Thus, we overrule Rogan to the extent that sovereign immunity invariably barred suits against the state for prospective injunctive relief of alleged constitutional violations unless such suits also requested declaratory relief." Id., 344-45.
Accordingly, "in Sentner, [the court] recognized a narrow exception for actions seeking prospective injunctive relief when the relief granted avoids undue interference with governmental functions." University of ConnecticutChapter, AAUP v. Governor, supra, 200 Conn. 388. In Duguayv. Hopkins, 191 Conn. 222, 227 n. 4 (1983) it was stated: "the state is subject to suit without consent . . . in a CT Page 1228 suit for injunctive relief when the action does not defeat the purpose of sovereign immunity by undue interference with governmental functions." Thus, if the plaintiff's requests for relief will cause undue interference with governmental functions, then they do not fall within the narrow exception created by Sentner and are therefore barred by sovereign immunity. The defendants claim if this relief is granted, it will clearly and unduly interfere with Ment's functions as chief court administrator.
General Statutes § 51-5a sets forth the duties and powers of the chief court administrator. Pursuant to subsection (3 ) Ment "may issue such orders . . . as he deemsnecessary to carry out his responsibilities."[7] (Emphasis added.)
General Statutes § 51-5a establishes that the allocation of resources is within the chief court administrator's discretion. A judicial order requiring Ment to deprive one judicial area of resources and appropriate them for another would eliminate his statutorily granted discretion. This court acting in its judicial function is not the proper forum to determine priorities among judicial areas or shift resources from one to another. This type of interference with governmental functions is barred by sovereign immunity since it does not fall within the narrow exception created by Sentner. The relief requested is so specific that it would necessarily interfere with the functions and discretion of the chief court administrator. The motion to strike the second prayer for relief must be granted because even if the allegations of the complaint are true, the court cannot legally award this relief.
 IV
The defendants also move to strike the plaintiff's third prayer for relief, which requests the court to order defendant Rossi to restore to parental custody any child whose parents are subjected to the unlawful practices described in this complaint. The defendants argue that this request should be stricken pursuant to Practice Book § 390(c). This section, however, applies only to declaratory judgments, which is not the substance of this prayer for relief. CT Page 1229
However, this prayer for relief again raises the question of defendants' sovereign immunity.
A court may raise the issue of its subject matter jurisdiction sua sponte. "Once the question of lack of jurisdiction is raised, it must be disposed of no matter in what form it is presented and the court must fully resolve it before proceeding with the case." State v. Carey,222 Conn. 299, 305 (1992). Of course, the doctrine of sovereign immunity implicates subject matter jurisdiction. FederalDeposit Insurance Corp. v. Peabody, N.E., Inc.,239 Conn. 93, 99 (1996). It would appear that sovereign immunity bars the plaintiff's third request for injunctive relief because the relief sought would unduly interfere with defendant Rossi's functions as commissioner of DCF.
Moreover, Rossi does not necessarily have the authority to issue such an order. General Statutes § 17a-10 (d) provides, in pertinent part, that "[i]f the commissioner . . . at any time during the commitment of any child, determines that termination of commitment of a child is in the best interest of such child, the commissioner . . . may terminate the commitment and such termination shall be effective without further action by the court." Nothing in the statute gives Rossi the authority to terminate all OTCs. General Statutes § 46b-129 (b) allows the court to vest the care and custody of the child in "some suitable agency or person" pursuant to an ex parte OTC. Accordingly, not all children who are the subject of an OTC are committed to the custody of DCF. The commissioner of DCF does not have the authority to terminate a court order vesting custody in some third person or agency. An order directing Rossi to terminate such OTCs would unduly interfere with her functions as commissioner, and is therefore barred by sovereign immunity.
With respect to those OTCs that vest custody with DCF, the termination of those orders is within the discretion of the commissioner if she determines such action to be in the best interest of the child. A court order directing a blanket termination of these OTCs would cause undue interference with Rossi's discretion and potentially endanger the welfare of countless children. This court will not issue an ex parte OTC unless there is "probable cause to believe that the child is suffering from serious physical CT Page 1230 illness or serious physical injury or is in immediate physical danger from the surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety." Practice Book § 1041.1(1); see also General Statutes § 46b-129 (b). Any blanket court order directing Rossi to return children to these surroundings would unduly interfere with her functions as commissioner of DCF, which is the legislatively designated department for the care of neglected and abused children. See General Statutes § 17a-3.[8]
For the above stated reasons, defendant's motion to strike plaintiff's three requests for injunctive relief is granted.
Wagner, J.T.R.