ARTHUR SILBERMAN ET ALS., EXECUTORS (WILL OF
ROBERT B. HIRSCH) *v.* CHARLES J. MCLAUGHLIN,
TAX COMMISSIONER, ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued April 10—decided July 16, 1942.

*Harry L. Brooks,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellants (defendants).

*Raymond E. Hackett,* with whom was *John D. Walker,* for the appellees (plaintiffs).

ELLS, J.  Robert B. Hirsch died on September 23, 1924, domiciled at Stamford, leaving bequests to New York charitable and educational corporations.  Under the law then existing, § 1 of Chapter 190 of the Public Acts of 1923, no corporations of these classes were exempt from our succession taxes unless they were located within our state and received state aid.  The executors resisted payment, but we held that since the corporations in question were located outside our state and were not the recipients of state aid the bequests were taxable.  Silberman v. Blodgett, 105 Conn. 192, 134 Atl. 778; affirmed, 277 U. S. 1, 48 Sup. Ct. 410.  As the result of this litigation the executors, on May 22, 1928, paid the succession tax, amounting to $147,065.39.  Material changes in our tax law became effective May 25, 1931.  Chapter 274 of the Public Acts of 1931 (Cum. Sup. 1931, § 243a) provided an exemption for "any corporation . . . organized under the laws of this state or of any state whose laws provide a similar exemption of transfers to any similar Connecticut corporation . . . formed for charitable, educational, literary, scientific, historical or religious purposes, provided the property transferred is to be used exclusively for one or more of such purposes," and provided certain other conditions exist, and that "all taxes collected by or paid to the state since May 1, 1927, the payment or collection of which would be contrary to the provisions of this section shall be refunded by the state."

The plaintiffs, though they now claim that they were clearly entitled, by virtue of the 1931 statute, to a refund of the tax paid in 1928, remained wholly silent until December, 1938, when they first began making claims for a refund.  It was not until March 3, 1939, that they brought an action to recover it. They allege in substance that they come within the

provisions of Chapter 274 and that they have made every effort to secure the refund but it has been denied them, and they seek a declaratory judgment declaring that they are entitled to it, "determining the manner and method by which said refunds shall be made to the plaintiffs and determining the respective duties and acts required of the plaintiffs and of any or all of the defendants in order to effectuate said refunds" and a judgment directing the defendants or any of them to perform such duties and acts as may be necessary to effectuate the refund upon the performance of such acts as the plaintiffs may be required to first perform in order to obtain the refund. The defendants are the tax commissioner, the attorney general, the comptroller and the treasurer. The state of Connecticut was not made a party defendant. The complaint was in two counts, but it is not now necessary to distinguish them. The trial court rendered judgment that the plaintiffs are entitled to the refund, with specific directions as to the procedure of payment. The defendants appealed.

The provisions of the statute in question are that taxes collected by or paid to the state since May 1, 1927, the collection of which would be contrary to the provisions of the 1931 act, "shall be refunded by the state." There are only two ways by which the courts could impose an obligation upon the state to refund these taxes: first, in an action against the state which the legislature has specifically authorized, and, second, by specific constitutional or legislative directions to certain officers to take the steps which would be necessary to payment by the treasurer of the amounts claimed. It is not proper for us, in this, a claim for a declaratory judgment in which the state is not a party, to attempt to declare whether the plaintiffs have a general right against the state. As to the second

method of recovery, if there were directions to some of the defendant officers to take the steps necessary for payment, the plaintiffs would be entitled to an adjudication of the question whether they have the right to have the necessary acts performed. But inevitably the further question would arise whether the plaintiffs' long delay in asserting their claimed rights permits the court to declare that they are now entitled to have those acts performed. Whether the staleness of the claim and the prolonged sleep of the plaintiffs be called laches or something else is not of controlling importance, as we shall later point out. As preliminary matter, it is to be remembered that this is an action for a declaratory judgment; it is therefore a statutory action and not one in equity; and when such a situation as that before us exists the ordinary remedy is by mandamus to compel proper acts by the officers, and mandamus is not an action in equity but an ancient common-law writ. Therefore laches in the ordinary legal acceptation of the term is not strictly applicable. The issuance of a mandamus, however, is within the legal discretion of the court and inequitable delay might be ground to refuse it. *Ansonia* v. *Studley*, 67 Conn. 170, 180, 34 Atl. 1030; see *State ex rel. White* v. *Mills*, 99 Conn. 217, 231, 121 Atl. 561.

We find no directions to any of the defendants such as are described in the second method mentioned above, except as to the treasurer and the comptroller, and the plaintiffs do not cite any. They concede that the statute itself contains no directions as to the procedure to be followed, and that consequently resort must be had to the provisions of the constitution, applicable statutes and decisions of this court, to define such duties. Article Fourth, § 17 of our constitution provides that the treasurer "shall receive all moneys belonging to the state, and disburse the same

only as he may be directed by law." See *State* v. *Blake.* 69 Conn. 64, 73, 36 Atl. 1019. Section 15c of the 1935 Cumulative Supplement provides: "The treasurer shall pay out the public moneys only upon the order of the general assembly, of the senate, of the house of representatives, of the several courts when legally authorized or of the comptroller for accounts legally adjusted by him or when he is authorized to order the payment of money from the treasury, and he shall pay no warrant or order until it shall have been registered by the comptroller. The comptroller shall not issue any warrant, draft or order except upon an adequate expenditure voucher which shall be retained in his office for the period provided by law." The plaintiffs claim that this act is mandatory in that it requires the treasurer to pay out the public moneys upon the order of the General Assembly, that the refund provisions of Chapter 274, supra, constitute a specific order and grant of the General Assembly, that the treasurer alone is chargeable with the duty of effectuating the refund and that certain preliminary acts required of the comptroller are purely ministerial. As to these acts of the comptroller, see § 15c, supra; Const. Conn. Art. 4, § 19; General Statutes, §§ 126, 135.

We have stated these claims in order to make it clear that we have not overlooked them. We find it unnecessary to determine them. A return of the plaintiffs' own money, as claimed by the plaintiffs, is not involved. We have already decided, in an earlier case concerning this estate, that it was the state's money. *Silberman* v. *Blodgett,* supra. No possible trust relationship was involved. It was not a tax paid illegally or by mistake. The reason for Chapter 274 is fairly obvious. The General Assembly recognized what it considered to be its moral obligation as the keeper of

the state's conscience and provided for a repayment, within limitations, to those who had paid a tax which they would have been exempt from paying under the provisions of the new legislative policy expressed in Chapter 274. It created a debt founded upon moral considerations. *Norwich Gas & Electric Co.* v. *Norwich*, 76 Conn. 565, 572, 57 Atl. 746; see *United States Sugar Equalization Board* v. *P. De Ronde & Co.*, 7 Fed. (2d) 981, 984. The plaintiffs had a demand in the nature of debt or credit between themselves and the state, arising from a duty by the state to pay, created by legislative fiat. If the plaintiffs had an action at law for the debt thus created and brought it eight years after the debt became due and payable, the Statute of Limitations would have been a bar to recovery. The plaintiffs doubtless recognized this difficulty and endeavored to hurdle it by bringing an action for a declaratory judgment, apparently believing that the form of this action being statutory and not an action at law, and not being an equitable action, the Statute of Limitations would not apply. See *Schempp* v. *Beardsley*, 83 Conn. 34, 75 Atl. 141. But it is necessarily involved in determining whether they are now entitled to recover the debt which the state declared it owed them. The defendants pleaded as special defense the Statute of Limitations, and laches. We are dealing with an act of grace by the sovereign, and the recipient of such largess must not himself be graceless. The state had every right to believe that the plaintiffs, if they desired to take advantage of the statute, would proceed with reasonable dispatch. Obviously a delay of eight years is too long. Whether or not the state has been specifically prejudiced by the delay is not, under the circumstances of this case, of controlling importance. See *Coombs* v. *Larson*, 112 Conn. 236, 246, 152 Atl. 297. Considera-

tions of public policy are involved. *City of Paducah* v. *Gillispie,* 273 Ky. 101, 104, 115 S. W. (2d) 574. See also *Mackall* v. *Casilear,* 137 U. S. 556, 566, 11 Sup. Ct. 178.

We therefore decide the case on the broad ground of an unconscionably long and inexcusable delay in asserting their rights on the part of these plaintiffs. Their excuse is that they did not know of the existence of the 1931 statute until informed of it by counsel sometime in the middle of the year 1937. It became a matter of public record in 1931. They are charged with knowledge of it and of the time it went into effect. The general proposition as to ignorance of the law is authoritatively stated in *Atlas Realty Corporation* v. *House,* 123 Conn. 94, 101, 192 Atl. 565. See also 21 C. J. 247, § 243b; 30 C. J. S. 555, § 128f, and cases there cited.

We have found it unnecessary to decide various other substantial claims made by the state, such as that the statute, Chapter 274, supra, is unconstitutional; and that, if it is constitutional, the plaintiffs have failed to qualify under it.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the defendants declaring that the plaintiffs have now no right to the refund claimed by them.

In this opinion MALTBIE, C. J., BROWN and JENNINGS, Js., concurred; AVERY, J., concurred in the result.