PERRY D. CAMINIS ET AL. *v.* AUSTIN TROY ET AL.
(AC 28955)

DiPentima, McLachlan and Peters, Js.

Argued September 16, 2008—officially released February 10, 2009

*David Thomas Ryan*, with whom were *John P. Casey* and, on the brief, *Dwight H. Merriam,* for the appellants-appellees (plaintiffs).

*Robert F. Maslan, Jr.,* with whom, on the brief, was *Amy J. Boland,* for the appellees-appellants (defendants).

PETERS, J. An ancient principle of the common law is that "the title in the soil of the sea, or of arms of the sea, below ordinary high water mark . . . is held subject to the public right, jus publicum, of navigation and fishing." (Internal quotation marks omitted.) *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 284, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997), quoting *Shively* v. *Bowlby*, 152 U.S. 1, 13, 14 S. Ct. 548, 38 L. Ed. 331 (1894). Although Connecticut law has long recognized that "the public, whose representative is the State, is the owner of the soil between high and low-water mark upon navigable water where the tide ebbs and flows"; *Rochester* v. *Barney*, 117 Conn. 462, 468, 169 A. 45 (1933); "[t]he owner of the adjoining upland has certain exclusive yet qualified rights and privileges in the waters and submerged land adjoining his upland," notably "the exclusive privilege of wharfing out and erecting piers over and upon such soil . . . . However, where a party's upland bordering on navigable waters adjoins and abuts the property of another, each must exercise his respective littoral rights with due regard for the corresponding rights of the other." (Citations omitted.) Id., 468–69. The principal issue in this case is whether protracted and prejudicial delay in establishing their littoral rights precludes upland property owners from receiving not only injunctive but also declaratory relief from their abutting neighbors. We affirm the judgment of the trial court denying the plaintiffs' application for an injunction because of laches but reverse the court's holding that the plaintiffs' laches do not bar their right to a declaratory judgment establishing the littoral rights boundary line between their property and that belonging to the defendants.

On October 12, 2005, the plaintiffs, Perry D. Caminis and Diane W. Caminis, filed a three count complaint against the defendants, Austin Troy and Dana Troy,

requesting (1) a declaratory judgment that the defendants had encroached on their "riparian" rights,[1] (2) compensatory damages for the defendants' violation of those rights and (3) an injunction ordering the defendants not to use, and to remove, any part of their dock system that intruded into the plaintiffs' littoral rights area. In their amended answer of June 16, 2006, the defendants denied the plaintiffs' claims but filed seven special defenses and a two count counterclaim.[2] Significantly, in their third special defense, the defendants claimed that the plaintiffs' extensive delay in asserting their rights constituted laches, barring the plaintiffs from both injunctive and declaratory relief.

After a court trial, the court granted the plaintiffs' request for a declaratory judgment and thereby set the littoral rights boundary line between the two properties as it had been depicted in a survey commissioned by the plaintiffs in 2000.[3] The court found this line to have been "applicable from . . . 1957 to the present." It further found that the defendants' dock and pilings

[1] As the trial court noted, "[t]here is often confusion between the terms 'littoral' and 'riparian' as applied to the water rights of property owners. 'Littoral' is the proper term for describing the rights that shoreline owners possess to make exclusive use of the land lying seaward of the mean high water mark. . . . '[R]iparian' rights are limited to rights related to the waters in a watercourse and include the right to take waters from a stream . . . ." (Citation omitted.) Although we note that the terms have been used interchangeably; see, e.g., *Rochester* v. *Barney*, supra, 117 Conn. 466, 469; we follow our Supreme Court in employing the more precise term "littoral" to describe the rights at issue in this case. See *Water Street Associates Ltd. Partnership* v. *Innopak Plastics Corp.*, 230 Conn. 764, 769 n.5, 646 A.2d 790 (1994).

[2] The defendants' seven special defenses were (1) adverse possession, (2) statute of limitations for tort actions, (3) laches, (4) estoppel by acquiescence, (5) failure to exhaust administrative remedies, (6) substantial compliance with state permits and (7) collateral estoppel. Their two count counterclaim was for declaratory judgments that they are entitled to maintain their dock system in its current location and that they own the littoral rights in that area.

[3] The defendants did not seek to introduce a survey of their own and "offered no evidence contradicting" the plaintiffs' survey.

"encroach upon the area of the plaintiffs' littoral rights," but denied the plaintiffs' request for an injunction because it found that the defendants had established their third special defense of laches. Subsequently, in response to an order for rectification issued by this court, the trial court clarified that it had determined that laches did not preclude the plaintiffs' right to legal relief in the form of a declaratory judgment. Finally, the court denied both counts of the defendants' counterclaim and each of their other six special defenses except the second, which pertained to the statute of limitations on the plaintiffs' abandoned claim for damages.[4]

The plaintiffs have appealed and the defendants have cross appealed. The central issue in both appeals is whether the trial court properly applied the law of laches. The plaintiffs contest the validity of the courts' finding that, as a matter of fact, the defendants established the basis for their defense of laches. Both parties argue that, as a matter of law, it was inconsistent for the court to have concluded that proof of the defense of laches barred the plaintiffs from obtaining injunctive relief but did not bar them from obtaining declaratory relief. We agree with the defendants that the court's finding of laches was not clearly erroneous as a matter of fact and that this finding required the court to conclude as a matter of law that the plaintiffs failed to establish their right to affirmative relief.[5]

The facts underlying the trial court's finding of laches are not in dispute. The parties are neighbors on the

[4] Relying on the plaintiffs' statement in their posttrial brief that they were seeking only a declaratory judgment and an injunction, the court inferred that the plaintiffs had abandoned their second count, which sought compensatory damages.

[5] Although the defendants also have briefed a number of other arguments reiterating some of their contentions at trial, they agreed at oral argument in this court that we need not resolve those claims if they prevailed on the question of laches as a defense to the plaintiffs' request for both injunctive and declaratory relief.

eastern shore of the navigable Five Mile River in Nor-
walk whose residential waterfront properties abut each
other near where the river joins Long Island Sound.
In 1957, a previous owner of the defendants' property
obtained a permit to build a fixed pier and attached
floating dock from the predecessor of the state depart-
ment of environmental protection (department). These
structures existed at the time the plaintiffs purchased
their property in 1975.

In 1984, John Morgan, the defendants' immediate pre-
decessor in title, obtained from the department a permit
to replace the existing float and several pilings and to
dredge the area around the floating dock. When this
work was completed in 1985, the plaintiffs became con-
cerned that the defendants' rebuilt float infringed on
their littoral rights area, in violation of the 1984 permit.
Although they expressed these concerns to the depart-
ment between 1985 and 1988, they did not engage a
surveyor to determine the boundary lines until 2000,
when they sought a permit from the department to build
a dock of their own.[6]

In 1991, the defendants purchased their home from
Morgan "without notice of any issue regarding the loca-
tion of the pilings and floating dock." It was not until
2000 that the plaintiffs asked the defendants to relocate
their float to accommodate the plaintiffs' own proposal
for a dock. The defendants declined to do so. Even

---

[6] Because its policy currently opposes approving fixed docks extending
into the "public trust lands and waters" below mean low water, the depart-
ment refused the plaintiffs' application of August, 2001, for a permit to build
a fixed pier of 148 feet. In its September, 2001 letter to the plaintiffs, however,
the department informed them that it likely would approve a fixed pier
extending 105 feet "to mean low water," which is more shallow than the
water in the dredged area beneath the defendants' float. The department
suggested that the plaintiffs ask the defendants "to share their dredged
footprint," which the defendants declined to do, or to reapply for a
shorter pier.

so, the plaintiffs did not commence the present action until 2005.

I

## THE PLAINTIFFS' APPEAL

The plaintiffs' appeal raises only one issue. They argue that, as a matter of fact, the evidence at trial did not support the court's factual finding that the defendants proved the elements of their special defense of laches. We are not persuaded.

The standard of review that governs appellate claims with respect to the law of laches is well established. "A conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law. . . . We must defer to the court's findings of fact unless they are clearly erroneous." (Internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 281, 880 A.2d 985 (2005).

"The defense of laches, if proven, bars a plaintiff from seeking equitable relief . . . . First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." (Internal quotation marks omitted.) Id. "The burden is on the party alleging laches to establish that defense." *Cummings* v. *Tripp*, 204 Conn. 67, 88, 527 A.2d 230 (1987). "The mere lapse of time does not constitute laches . . . unless it results in prejudice to the [opposing party] . . . as where, for example, the [opposing party] is led to change his position with respect to the matter in question." (Internal quotation marks omitted.) *Fromm* v. *Fromm*, 108 Conn. App. 376, 385–86, 948 A.2d 328 (2008).

The plaintiffs first claim that the court improperly found that the defendants had proved that the plaintiffs'

protracted delay over many years was inexcusable. Without disputing the factual support for the court's findings, the plaintiffs maintain that the facts on which the court relied do not establish the defendant's contention. We disagree.

The central factual findings on which the court relied were that, despite having been alerted as early as 1985 that Morgan's dock might be infringing on their littoral rights, the plaintiffs "took no action" to have the boundary lines surveyed until 2000. They then waited another five years before bringing an action. It is true that they sporadically sought redress between 1985 and 1988, and again between 2000 and 2005, mostly through the department, which informed them in 2001 that it did not have the authority to decide private littoral rights boundary disputes. Nonetheless, neither in their briefs nor at oral argument before this court have the plaintiffs offered a satisfactory explanation for their long inaction between 1988 and 2000. The court reasonably found it significant that the plaintiffs did not explain their further protracted delay in bringing an action, even after their suspicions of encroachment apparently had been confirmed by the survey of 2000 and the department had advised them to take the matter to court. On this record of undisputed facts, the court reasonably found that the defendants had proved the first element of laches, namely, that the plaintiffs had inexcusably delayed in asserting their rights.

In the alternative, the plaintiffs claim that the court improperly found that the defendants established that they had been prejudiced by the plaintiffs' delay. Again, the underlying facts are not at issue. Again, we are not persuaded by the plaintiffs' argument.

The court found that if the defendants had known that the float and pilings were located within the area of the plaintiffs' exclusive littoral rights, they would not

have (1) purchased their residence in 1991, (2) paid the price they did for their property, (3) paid real property taxes based in part on the value of the float and dock and (4) maintained and repaired the dock. Moreover, the evidence showed that the defendants had "expended considerable sums of money in improving their property prior to being put on notice of the plaintiffs' concerns regarding the location of the pilings and floating dock." As boat owners, the existence of the dock was an important factor in their decision to buy the Morgan property. After the purchase, the defendants invested more than $500,000 in alterations and improvements to the residence on the property. This undisputed evidence amply supports the court's finding of prejudice to the defendants from the plaintiffs' delay.

In view of this considerable record of delay by the plaintiffs and detrimental reliance by the defendants, the plaintiffs have failed to demonstrate any impropriety in the court's factual findings in support of the defendants' defense of laches. They maintain, however, that the court's analysis of laches was flawed by the court's failure to undertake an assessment of comparative damage pursuant to the holdings of two older Connecticut Supreme Court cases, *Bauby* v. *Krasow*, 107 Conn. 109, 139 A. 508 (1927), and *Gage* v. *Schavoir*, 100 Conn. 652, 124 A. 535 (1924). The plaintiffs maintain that these cases require a trial court, as a matter of law, to rule against a defense of laches unless the delay by the parties seeking injunctive relief "made it impossible or very difficult for the court to enjoin [their] adversary without inflicting great injury thereby . . . ."[7] (Internal

---

[7] The plaintiffs also claim that the trial court did not sufficiently consider their right to an injunction under Practice Book § 17-56 (a) (3), which provides that "actions claiming coercive relief may also be accompanied by a claim for a declaratory judgment, either as an alternative remedy or as an independent remedy." The right of plaintiffs to seek both declaratory and coercive relief, however, is not at issue in the present case. As the plaintiffs have not adequately briefed the relevance of this argument, we deem it abandoned. See *State* v. *Clark*, 255 Conn. 268, 281 n.30, 764 A.2d 1251 (2001).

quotation marks omitted.) Id., 664–65, quoting *Fisk* v. *Hartford*, 70 Conn. 720, 732, 40 A. 906 (1898); see also *Adams* v. *Greenwich Water Co.*, 138 Conn. 205, 218, 83 A.2d 177 (1951). The plaintiffs maintain that if the court had conducted "a more thorough review of the equities involved" under this "theory of comparative damage," it would have found that requiring the defendants to move their dock would have imposed no "great injury upon them," and consequently that, on the present record, the defendants have not established that laches bar the plaintiffs' right to injunctive relief. We do not agree.

The plaintiffs' reliance on those cases is unpersuasive for two reasons. To the extent that the plaintiffs assert that the trial court was required, as a matter of law, to undertake some special form of balancing of the equities beyond that normally associated with the law of laches, they have failed to demonstrate when and where they called this principle of law to the attention of the trial court. In the absence of some such showing, it is not properly before us. "We have stated repeatedly that we ordinarily will not review an issue that has not been properly raised before the trial court." (Internal quotation marks omitted.) *Traggis* v. *Shawmut Bank Connecticut, N.A.*, 72 Conn. App. 251, 264, 805 A.2d 105, cert. denied, 262 Conn. 903, 810 A.2d 270 (2002); see also Practice Book § 60-5 (court not bound to consider claim unless distinctly raised at trial or arose subsequent to trial).

More importantly, however, as more recent case law demonstrates, the cases on which the plaintiffs rely simply illustrate the breadth of the trial court's fact-bound exercise of discretion in balancing the equities of a proposed injunction. See *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 145, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003). Similarly, the

statement in *Adams* v. *Greenwich Water Co.*, supra, 138 Conn. 218, that "[i]n an action involving riparian rights, a mandatory injunction should ordinarily be refused on the theory of comparative damage between the parties only [inter alia] . . . where the plaintiff has been guilty of laches" does not suggest a sea change in the role of fact-finding to determine *whether* the plaintiff has been guilty of laches. The record before us provides more than ample support for the trial court's finding of laches.

## II

### THE DEFENDANTS' CROSS APPEAL

In their cross appeal, the defendants assert that the court improperly rendered a declaratory judgment for the plaintiffs, as a matter of law, after having found that the defendants had established their defense of laches as a matter of fact. Both parties agree that an action for declaratory judgment is the proper vehicle for determining the littoral rights boundary line in navigable waters between adjoining properties; see *Water Street Associates Ltd. Partnership* v. *Innopak Plastics Corp.*, 230 Conn. 764, 765–66, 646 A.2d 790 (1994); and both sought that remedy in the present case. According to the defendants, however, because the request for a declaratory judgment in this case is based on an underlying claim that sounds in equity and is subject to laches, the declaratory action is likewise subject to the same defense. We agree.

Under the applicable standard of review, although "[a] conclusion that a plaintiff has been guilty of laches is one of fact for the trier . . . [w]hether the defense of laches [is] applicable . . . is a question of law. When there is a question of law, our review of the court's decision is plenary." (Citation omitted; internal quotation marks omitted.) *Florian* v. *Lenge*, supra, 91 Conn. App. 281.

"Courts have routinely referred to laches as an equitable defense, that is, a defense to equitable remedies but not a defense available to bar a claim of legal relief." 1 D. Dobbs, Law of Remedies (2d Ed. 1993) § 2.4 (4), p. 105. In *Florian* v. *Lenge*, supra, 91 Conn. App. 282, for instance, this court held that "[l]aches is purely an equitable doctrine . . . not to be imputed to one who has brought an action at law . . . ." Although "courts have not settled fully on any firm approach" for determining whether a claim sounds in equity rather than at law, "[i]n general, a case will be treated as equitable if an equitable, coercive remedy is invoked" such as "injunction, otherwise not." D. Dobbs, supra, § 2.6 (3), p. 155.

In its clarified ruling that laches did not bar the plaintiffs' claim for a declaratory judgment "as a legal action," the trial court relied principally on *Silberman* v. *McLaughlin*, 129 Conn. 273, 276, 27 A.2d 634 (1942), and *U.S. Fidelity & Guaranty Co.* v. *Spring Brook Diary, Inc.*, 135 Conn. 294, 299, 64 A.2d 39 (1949), quoting *Silberman*, which describe an action for a declaratory judgment as "not one in equity." Neither of these cases, however, supports the proposition that laches may not bar a claim for declaratory relief. As best we can tell, this issue is one of first impression for the appellate courts of this state.

In *Silberman*, our Supreme Court did not state that an action for declaratory relief is a "legal action," or that, as such, it is immune from a laches defense but, rather, that it is "a statutory action and not one in equity . . . ." *Silberman* v. *McLaughlin*, 129 Conn. 276. More importantly, the court *denied* the requested declaratory relief in that case and precluded the similarly nonequitable remedy of mandamus "on the broad ground of an unconscionably long and inexcusable delay" by the plaintiffs. Id., 279. "Whether the staleness of the claim and the prolonged sleep of the plaintiffs be called laches

or something else is not of controlling importance" when equitable principles are within the court's discretion to consider, even if "laches in the ordinary legal acceptation of the term is not strictly applicable." Id., 276. The holding of *Silberman* is thus consonant with the more recent cases of *Middlebury* v. *Steinmann*, 189 Conn. 710, 715–16, 458 A.2d 393 (1983), and *Wilson* v. *Kelley*, 224 Conn. 110, 116, 617 A.2d 433 (1992), which support the proposition that an action for declaratory judgment is subject to equitable defenses when the underlying cause of action on which it is based sounds in equity.

In *Middlebury* v. *Steinmann*, supra, 189 Conn. 711–12, the trial court had granted the plaintiff town a declaratory judgment stating that an easement for a sewer line right-of-way, which the town had acquired by condemnation, was superior to the defendant's interest as owner of the land through which the easement ran. The defendant unsuccessfully appealed, claiming insufficient notice of the condemnation proceeding because the lis pendens recorded in conjunction with that proceeding failed to describe the subject property adequately. Id., 713. In affirming the grant of a declaratory judgment on equitable grounds, our Supreme Court acknowledged that although a proceeding for a declaratory judgment is "a special statutory action and therefore distinct from one seeking the imposition of equitable relief," in appropriate cases "the trial court may, in determining the rights of the parties, properly consider equitable principles in rendering its judgment. . . . This conclusion not only harmonizes the rule that actions in law and equity may be combined in this state . . . it is also in accord with our position favoring liberal construction of the declaratory judgment statute in order to effectuate its sound social purpose."[8] (Citations omitted; internal quotation marks omitted.) Id., 715–16.

---

[8] General Statutes § 52-29, entitled "Superior Court may declare rights and legal relations," provides: "(a) The Superior Court in any action or

In analyzing whether a declaratory judgment action is barred by a particular statutory period of limitations, our Supreme Court relied on the same principle of examining "the underlying claim or right on which the declaratory action is based" because "[d]eclaratory relief is a mere procedural device by which various types of substantive claims may be vindicated." (Internal quotation marks omitted.) *Wilson* v. *Kelley*, supra, 224 Conn. 115–16.[9] Accordingly, the court held that a declaratory judgment action "must rest on some cause of action that would be cognizable in a nondeclaratory suit. . . . To hold otherwise would convert our declaratory judgment statute and rules into a convenient route for procuring an advisory opinion . . . ." (Citation omitted; internal quotation marks omitted.) Id., 116. "It necessarily follows that if a statute of limitations would have barred a claim asserted in an action for relief other than a declaratory judgment, then the same limitation period will bar the same claim asserted in a declaratory judgment action." Id.

In *Wilson*, the defendants had abandoned their laches defense on appeal, giving the court no opportunity to address directly whether laches would have barred the plaintiffs' declaratory judgment action as had the particular statute of limitations in that case. Id., 115 n.4. Our Supreme Court's characterization in *Wilson* of declaratory relief as derivative in nature, however, read in light of the court's application of equitable principles to an action for declaratory judgment in *Middlebury*, indicates that an action for a declaratory judgment in this

proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment.

"(b) The judges of the Superior Court may make such orders and rules as they may deem necessary or advisable to carry into effect the provisions of this section."

[9] In *Wilson* v. *Kelley*, supra, 224 Conn. 110, our Supreme Court reversed, on the basis of a one year statute of limitations, a judgment rendered in favor of the plaintiff taxpayers declaring that their town's grand list was invalid and enjoining the tax collector from collecting taxes based on the list.

state should be subject to equitable defenses such as laches when the underlying cause of action on which it is based sounds in equity. Indeed, the Superior Court expressly found laches to be a valid defense against an action for a declaratory judgment in *Plymouth* v. *Church-Dlugokenski*, 48 Conn. Sup. 481, 488 n.7, 852 A.2d 882 (2003). In that case, both the plaintiff town and the defendant citizen sought declaratory judgments to determine whether a town school bond referendum should be held invalid as a result of illegal voting. Id., 482. In deciding the issue in favor of the plaintiff, the trial court determined that the defendant's counterclaim for a declaratory judgment was subject to laches because the "ultimate remedy" she sought, namely, to declare the referendum and approval of the bond issue void, was "akin to that of an injunction" and "quasi-equitable in nature." Id., 492. We agree with that holding.

We note, furthermore, that courts in other jurisdictions have held the defense of laches to be available in an action for a declaratory judgment. The Supreme Court of Rhode Island has held that "[a] declaratory judgment proceeding is neither an action at law nor a suit in equity but a novel statutory proceeding . . . sufficiently equitable in nature to justify the application of the doctrine of laches in appropriate circumstances." (Citation omitted; internal quotation marks omitted.) *Northern Trust Co.* v. *Zoning Board of Review*, 899 A.2d 517, 520 n.6 (R.I. 2006). The Supreme Court of North Carolina likewise has held that "[s]ince proceedings for declaratory relief have much in common with equitable proceedings, the equitable doctrine of laches has been applied in such proceedings." (Internal quotation marks omitted.) *Taylor* v. *Raleigh*, 290 N.C. 608, 622 n.10, 227 S.E.2d 576 (1976). The courts of several other jurisdictions have reached a similar conclusion.[10]

---

[10] The Supreme Court of the United States has also held, with respect to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, that because "declaratory judgment and injunctive remedies are equitable in nature . . .

We conclude therefore that, on the record of this case, it was improper for the trial court to have granted the plaintiffs' request for a declaratory judgment that set the littoral boundary lines between the parties. At best, the plaintiffs might have had a sustainable claim to establish that line to protect themselves from future encroachment on their littoral rights by the defendants or by their successors. In the absence of any such claim either at trial or in this appeal, however, the court's well supported factual finding that the defendants had established their defense of laches supported the defendant's legal claims that the plaintiffs had forfeited both their right to an injunction and their right to a declaratory judgment. A "trial court's conclusions . . . must stand unless they are legally or logically inconsistent with the facts found . . . ." (Internal quotation marks omitted.) *Cummings* v. *Tripp*, supra, 204 Conn. 87.

In sum, because the trial court's finding of laches was correct, the denial of the plaintiffs' request for an injunction was proper. For the same reason, the judgment declaring the plaintiffs' littoral rights must be reversed.

[t]he defense of laches could be asserted if the Government is prejudiced by a delay." (Citations omitted.) *Abbott Laboratories* v. *Gardner*, 387 U.S. 136, 155, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967). The Supreme Court of Wyoming similarly has determined that "an action for declaratory relief is essentially equitable in character," and therefore subject to laches. *Anderson* v. *Wyoming Development Co.*, 60 Wyo. 417, 469 n.13, 154 P.2d 318 (1944).

The Supreme Court of Alaska has observed that because that state's declaratory judgment act added "another remedy to existing legal and equitable remedies," its courts have "applied laches if the claim would have arisen in equity before declaratory judgment was available." *Laverty* v. *Alaska Railroad Corp.*, 13 P.3d 725, 730 (Alaska 2000). The Illinois Appellate Court has similarly held that because a declaratory judgment action is "neither legal nor equitable but rather *sui generis*," laches "is available as an affirmative defense in declaratory judgment proceedings." (Emphasis in orginal.) *Villiger* v. *Henry*, 47 Ill. App. 3d 565, 567, 362 N.E.2d 120 (1977).

In contrast, the Supreme Court of Georgia has held that "[l]aches is an equitable doctrine not applicable in a petition for declaratory judgment, which is an action at law." (Internal quotation marks omitted.) *Jones* v. *Douglas County*, 262 Ga. 317, 320, 418 S.E.2d 19 (1992).

On the defendants' cross appeal, the judgment is reversed in part and the case is remanded with direction to deny the plaintiffs' request for a declaratory judgment. On the plaintiffs' appeal, the judgment is affirmed.

In this opinion the other judges concurred.