PERRY D. CAMINIS ET AL. *v.* AUSTIN
TROY ET AL.
(SC 18335)

Norcott, Palmer, Zarella, Eveleigh and Vertefeuille, Js.

Argued December 9, 2010—officially released March 1, 2011

*Linda L. Morkan*, with whom were *John P. Casey* and, on the brief, *David Thomas Ryan*, for the appellants (plaintiffs).

*Robert F. Maslan, Jr.*, with whom was *Carolyn M. Colangelo*, for the appellees (defendants).

*Opinion*

EVELEIGH, J. This appeal arises from an action brought by the plaintiffs, Perry D. Caminis and Diane W. Caminis,[1] seeking declaratory and injunctive relief regarding portions of a floating dock and related pilings belonging to their neighbors, the defendants, Austin Troy and Dana Troy, which they claim encroach upon their littoral rights.[2] The plaintiffs now appeal, following

---

[1] In its memorandum of decision, the trial court noted that Perry D. Caminis had testified at trial that, although he had been co-owner of the plaintiffs' property from 1975 until shortly before trial, he had recently deeded his interest in the property to Diane W. Caminis, leaving her as the sole owner of the property. The trial court, the Appellate Court, and the parties, however, referred to the plaintiffs in the plural, and in the interest of consistency we likewise refer to the plaintiffs in the plural.

[2] "Black's Law Dictionary (6th Ed. 1990) defines littoral rights as: Rights concerning properties abutting an ocean, sea or lake rather than a river or stream (riparian)." (Internal quotation marks omitted.) *Water Street Associates Ltd. Partnership* v. *Innopak Plastics Corp.*, 230 Conn. 764, 766 n.3, 646 A.2d 790 (1994). "[T]here is often confusion between the terms littoral and riparian as applied to the water rights of property owners. Littoral is the proper term for describing the rights that shoreline owners possess to make exclusive use of the land lying seaward of the mean high water mark. . . . [R]iparian rights are limited to rights related to the waters in a watercourse and include the right to take waters from a stream . . . ." (Internal quotation marks omitted.) *Caminis* v. *Troy*, 112 Conn. App. 546, 549 n.1, 963 A.2d 701 (2009). "[O]wners of . . . upland [appurtenant to bodies of water] have the exclusive, yet qualified, right and privilege to dig channels and wharf out from the owner's land in a manner that does not interfere with free navigation." *Water Street Associates Ltd. Partnership* v. *Innopak Plastics Corp.*, supra, 769. The proper term to describe the property rights at issue in this appeal is littoral. See id., 769 n.5.

our grant of certification,[3] from the judgment of the Appellate Court, which affirmed in part and reversed in part the judgment of the trial court.[4] See *Caminis* v. *Troy*, 112 Conn. App. 546, 963 A.2d 701 (2009). On appeal, the plaintiffs claim that the Appellate Court improperly concluded that the doctrine of laches barred the plaintiffs' request for an injunction, and also, as a matter of law, their request for a declaratory judgment. We affirm the judgment of the Appellate Court on the alternative ground that the defendants successfully proved at trial that they adversely possessed the contested littoral area, and the plaintiffs' claims are barred because they were brought outside the fifteen year limitations period set forth in General Statutes § 52-575.[5]

---

[3] We granted the plaintiffs' petition for certification to appeal, limited to the following issues: "1. Did the Appellate Court properly determine that the trial court erred in rendering a judgment declaring the littoral boundary of the plaintiffs' property?

"2. Did the Appellate Court properly determine that the trial court correctly denied the plaintiffs' request for an injunction?" *Caminis* v. *Troy*, 291 Conn. 909, 969 A.2d 171 (2009).

[4] The Appellate Court affirmed the judgment of the trial court denying the plaintiffs' request for an injunction on the basis of laches, but reversed the judgment of the trial court granting the plaintiffs' request for a declaratory judgment, concluding that the plaintiffs' request for a declaratory judgment similarly was barred by laches. *Caminis* v. *Troy*, 112 Conn. App. 546, 561–62, 963 A.2d 701 (2009). Because we decide this appeal on alternative grounds, we need not reach these issues.

[5] General Statutes § 52-575 provides in relevant part: "(a) No person shall make entry into any lands . . . but within fifteen years next after his right or title to the same first descends or accrues or within fifteen years next after such person or persons have been ousted from possession of such land . . . and every person, not entering as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards; and no such entry shall be sufficient, unless within such fifteen-year period, any person or persons claiming ownership of such lands . . . and the right of entry and possession thereof against any person or persons who are in actual possession of such lands . . . gives notice in writing to the person or persons in possession of the land . . . of the intention of the person giving the notice to dispute the right of possession of the person or persons to whom such notice is given and to prevent the other party or parties from acquiring such right, and the notice being served and recorded as provided in sections 47-39 and 47-40 shall be deemed an interruption of the use and possession and shall

The following undisputed facts and procedural history are set forth in the opinion of the Appellate Court. "The parties are neighbors on the eastern shore of the navigable Five Mile River in Norwalk whose residential waterfront properties abut each other near where the river joins Long Island Sound. In 1957, a previous owner of the defendants' property obtained a permit to build a fixed pier and attached floating dock from the predecessor of the state department of environmental protection (department). These structures existed at the time the plaintiffs purchased their property in 1975.

"In 1984, John Morgan, the defendants' immediate predecessor in title, obtained from the department a permit to replace the existing float and several pilings and to dredge the area around the floating dock. When this work was completed in 1985, the plaintiffs became concerned that the defendants' rebuilt float infringed on their littoral rights area, in violation of the 1984 permit. Although they expressed these concerns to the department between 1985 and 1988, they did not engage a surveyor to determine the boundary lines until 2000, when they sought a permit from the department to build a dock of their own.

"In 1991, the defendants purchased their home from Morgan 'without notice of any issue regarding the location of the pilings and floating dock.' It was not until 2000 that the plaintiffs asked the defendants to relocate their float to accommodate the plaintiffs' own proposal for a dock. The defendants declined to do so. Even so, the plaintiffs did not commence the present action until 2005." Id., 550–52.

"On October 12, 2005, the plaintiffs . . . filed a three count complaint against the defendants . . .

prevent the acquiring of a right thereto by the continuance of the use and possession for any length of time thereafter, provided an action is commenced thereupon within one year next after the recording of such notice. . . ."

requesting (1) a declaratory judgment that the defendants had encroached on their [littoral] rights, (2) compensatory damages for the defendants' violation of those rights and (3) an injunction ordering the defendants not to use, and to remove, any part of their dock system that intruded into the plaintiffs' littoral rights area. In their amended answer of June 16, 2006, the defendants denied the plaintiffs' claims but filed seven special defenses and a two count counterclaim." Id., 548–49. In their first special defense, the defendants asserted that the plaintiffs' claims were brought more than fifteen years after the construction of the dock and, therefore, the claims were barred by § 52-575. In the second count of their counterclaim, the defendants sought a declaratory judgment that they had adversely possessed the contested littoral area for the fifteen year period prescribed by § 52-575 and, therefore, the plaintiffs' claims were barred by § 52-575.

"After a court trial, the court granted the plaintiffs' request for a declaratory judgment and thereby set the littoral rights boundary line between the two properties as it had been depicted in a survey commissioned by the plaintiffs in 2000. The court found this line to have been 'applicable from . . . 1957 to the present.' It further found that the defendants' dock and pilings 'encroach upon the area of the plaintiffs' littoral rights,' but denied the plaintiffs' request for an injunction because it found that the defendants had established their third special defense of laches. . . . Finally, the [trial] court denied both counts of the defendants' counterclaim and each of their other six special defenses except the second, which pertained to the statute of limitations on the plaintiffs' abandoned claim for damages.

"The plaintiffs [then] appealed and the defendants . . . cross appealed. The central issue in both appeals [before the Appellate Court was] whether the trial court

properly applied the law of laches. The plaintiffs contest[ed] the validity of the [trial] courts' finding that, as a matter of fact, the defendants established the basis for their defense of laches. Both parties argue[d] that, as a matter of law, it was inconsistent for the [trial] court to have concluded that proof of the defense of laches barred the plaintiffs from obtaining injunctive relief but did not bar them from obtaining declaratory relief. [The Appellate Court agreed] with the defendants that the [trial] court's finding of laches was not clearly erroneous as a matter of fact and that this finding required the [trial] court to conclude as a matter of law that the plaintiffs failed to establish their right to affirmative relief [in the form of the requested injunction]." Id., 549–50. This certified appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiffs claim that the Appellate Court improperly concluded that the trial court: (1) properly determined that the doctrine of laches barred the plaintiffs' request for an injunction; and (2) having found laches, was required, as a matter of law, to deny the plaintiffs' request for a declaratory judgment. The defendants disagree, claiming that the Appellate Court properly concluded that: (1) the trial court properly determined that laches barred the plaintiffs' request for injunctive relief; and (2) laches similarly barred the plaintiffs' request for a declaratory judgment.

Pursuant to Practice Book § 84-11,[6] the defendants also assert several alternative grounds upon which to affirm the judgment of the Appellate Court.[7] In their

[6] Practice Book § 84-11 (a) provides in relevant part: "Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the [A]ppellate [C]ourt. . . ."

[7] Specifically, the defendants claim that the judgment of the Appellate Court may be affirmed on the alternative grounds that: (1) the plaintiffs' claims for declaratory and injunctive relief are barred by the statute of limitations contained in § 52-575; (2) the plaintiffs' claims are barred by the statute of limitations contained in General Statutes § 52-577; (3) the plaintiffs

first and third alternate grounds for affirmance, the defendants contend that the plaintiffs' claims for a declaratory judgment and injunctive relief are barred under § 52-575, which sets forth a fifteen year statute of limitations within which a property owner must contest the adverse possession of his or her property. Specifically, the defendants assert that because more than fifteen years passed between the construction of the dock in 1985 that allegedly encroached on the plaintiffs' littoral area, and the plaintiffs' commencement of this action in 2005, the plaintiffs' action is barred by adverse possession.[8] The defendants further claim that the trial court improperly found that: (1) the defendants could not establish a "claim of right" to the contested littoral area because the dock and pilings had been constructed pursuant to permits issued by the department; and (2) the evidence failed to establish that the defendants satisfied the elements of adverse possession.

The plaintiffs disagree. The plaintiffs first claim that the trial court properly determined that the defendants could not establish a claim of right to the contested littoral area because the dock and pilings had been

are not entitled to their requested relief because, prior to commencing the present action, the defendants acquired the contested littoral area by adverse possession; or (4) the plaintiffs are not entitled to their requested relief because they do not have exclusive control over the area in which the defendants' dock and pilings are located.

[8] As a species of property, littoral rights are subject to claims of adverse possession and prescriptive easement. See *Stefanoni* v. *Duncan*, 282 Conn. 686, 698–702, 923 A.2d 737 (2007) (claim that easement allowed plaintiff to construct dock in defendant's littoral area); *McGibney* v. *Waucoma Yacht Club, Inc.*, 149 Conn. 560, 562–66, 182 A.2d 622 (1962) (claim that defendant had acquired easement to construct dock on plaintiff's littoral area); *McCullough* v. *Waterfront Park Assn., Inc.*, 32 Conn. App. 746, 757–58, 630 A.2d 1372 (claim that easement allowed defendant to construct dock in plaintiff's littoral area), cert. denied, 227 Conn. 933, 632 A.2d 707 (1993); *Oak Leaf Marina, Inc.* v. *Ertel*, 23 Conn. App. 91, 92–94, 579 A.2d 568 (claim of adverse possession of plaintiff's littoral area where reconstructed dock exceeded defendant's littoral area), cert. denied, 216 Conn. 827, 582 A.2d 206 (1990).

constructed pursuant to two permits. The plaintiffs therefore claim that the defendants cannot assert that they satisfied the element of adverse possession requiring that the dock and pilings had been installed or maintained in the littoral area under a claim of right. The plaintiffs also claim that the defendants failed to prove by clear and convincing evidence the necessary elements of adverse possession. We agree with the defendants that the trial court improperly found that they could not establish a claim of right and that the evidence failed to establish that the defendants had successfully adversely possessed the contested littoral area. Accordingly, we affirm the judgment of the Appellate Court, albeit on this alternative ground.

We begin by setting forth the applicable standard of review. "Adverse possession is not to be made out by inference, but by clear and positive proof. . . . [C]lear and convincing proof[9] denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Citations omitted; internal quotation marks omitted.) *Wildwood Associates, Ltd.* v. *Esposito*, 211 Conn. 36, 42, 557 A.2d 1241 (1989). The burden of proof is on the party claiming adverse possession. *Alexson* v. *Foss*, 276 Conn. 599, 614 n.13, 887 A.2d 872

---

[9] This court has considered the phrase clear and positive proof to embody the same substantive standard as the phrase clear and convincing proof. See *Wildwood Associates, Ltd.* v. *Esposito*, 211 Conn. 36, 42 n.3, 557 A.2d 1241 (1989); *Lopinto* v. *Haines*, 185 Conn. 527, 534 n.9, 441 A.2d 151 (1981).

(2006); *Roche* v. *Fairfield,* 186 Conn. 490, 498, 442 A.2d 911 (1982).

"Despite [this] exacting standard, our scope of review is limited. . . . Because adverse possession is a question of fact for the trier . . . the [trial] court's findings as to this claim are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . A trial court's findings in an adverse possession case, if supported by sufficient evidence, are binding on a reviewing court . . . ." (Internal quotation marks omitted.) *Eberhart* v. *Meadow Haven, Inc.,* 111 Conn. App. 636, 641, 960 A.2d 1083 (2008); see also *Wildwood Associates, Ltd.* v. *Esposito,* supra, 211 Conn. 42 (discussing limited scope of review employed by appellate courts).

In its memorandum of decision, the trial court found that the defendants could not assert a claim of right[10] to the plaintiffs' littoral area as a result of language in

---

[10] "[A] claim of right means that the entry by the claimant must be in accordance with a claim to the property as the claimant's own with the intent to hold it for the entire statutory period without interruption." (Internal quotation marks omitted.) *Eberhart* v. *Meadow Haven, Inc.,* supra, 111 Conn. App. 643. In the closely related context of claims of prescriptive easement, this court has stated that "[t]he requirement that the [use] must be exercised under a claim of right does not necessitate proof of a claim actually made and brought to the attention of the owner . . . . It means nothing more than a [use] as of right, that is, without recognition of the right of the landowner . . . ." (Internal quotation marks omitted.) *Slack* v. *Green,* 294 Conn. 418, 428, 984 A.2d 734 (2009).

the 1957[11] and 1984[12] permits issued by the department to the defendants' predecessors in title. The trial court found that "all rights exercised by Morgan and the defendants, as his successors, were granted by the state pursuant to permits issued under the authority of the General Statutes. The actions taken by Morgan and the defendants under the permits were not taken 'with such circumstances as to evince a claim of exclusive right and title.' Indeed, by acceptance of the permits they agreed that they were not thereby acquiring 'any present or *future* property rights.' . . . Under these circumstances, the court finds that the defendants have not acquired title to any portion of the plaintiffs' littoral rights by adverse possession." (Emphasis in original.)

In making this determination, the trial court relied solely on *Matto* v. *Dan Beard, Inc.*, 15 Conn. App. 458, 546 A.2d 854, cert. denied, 209 Conn. 812, 550 A.2d 1082 (1988), which it concluded stood for the principle that "defendant[s] who had exercised rights beyond those granted in a permit issued by the [department], could not thereby acquire the littoral rights of an adjacent littoral owner [by adverse possession]." A review of *Matto*, however, reveals that the trial court incorrectly relied upon it for the principle that a party cannot assert a claim of right when their claim arises under the auspices of a permit.

[11] The 1957 permit provides in relevant part: "It is not the intent [of the water resources commission, the predecessor to the department] to convey or waive any property right in any lands of the state, nor will this letter be construed as giving any property rights in real estate or material or any exclusive privileges, nor does it authorize any injury to private property or the invasion of private rights or any infringement of federal, state or local laws or regulations. . . ."

[12] The 1984 permit authorizing the dock presently in dispute provides in relevant part: "This permit is subject to and does not derogate any present or future property rights or other rights or powers of the [s]tate of Connecticut, and conveys no property rights in real estate or material nor any exclusive privileges, and is further subject to any and all public and private rights and to any federal, state or local laws or regulations pertinent to the property or activity affected hereby. . . ."

In *Matto* v. *Dan Beard, Inc.*, supra, 15 Conn. App. 483–84, the defendants had performed sand and gravel dredging operations under a state issued permit containing language that the permit was not intended to convey any property rights to the permittee and that it was subject to all public and private rights. The crucial consideration in that case, however, was that the defendants claimed the right to adversely possess the "foreshore," the area of land between high tide and low tide that belongs to the state and, therefore, may not be adversely possessed.[13] Id., 482. Additionally, the fact that the permit therein expressly barred the defendants from adversely possessing state owned property merely reinforced the Appellate Court's conclusion that the defendants were barred from asserting a claim for adverse possession of the foreshore. Id., 483–84. The court in *Matto* did not conclude that, as a matter of law, a party may never assert a claim of right to adversely possess eligible property simply because the party's conduct occurred under the auspices of a permit. The trial court in the present case therefore improperly relied on that decision in finding that the defendants could not satisfy the claim of right element of adverse possession because the dock and pilings had been constructed pursuant to the two permits.

We believe that a proper reading of the 1957 and 1984 permits in the present case; see footnotes 11 and 12 of

---

[13] "In Ballentine's Law Dictionary (3d Ed. 1969), the term foreshore is defined as [t]he territory lying between the lines of high water and low water, over which the tide ebbs and flows." (Internal quotation marks omitted.) *Stefanoni* v. *Duncan*, 282 Conn. 686, 690 n.2, 923 A.2d 737 (2007). "[T]itle to the area between the mean low tide and mean high tide lines, covered by the daily flow of tides (the wet sand area, also called the foreshore or tideland), remains in the state . . . ." *Leabo* v. *Leninski*, 182 Conn. 611, 617, 438 A.2d 1153 (1981). "It is well established that '[t]itle to realty held in fee by a state or any of its subdivisions for a public use cannot be acquired by adverse possession.'" *American Trading Real Estate Properties, Inc.* v. *Trumbull*, 215 Conn. 68, 77, 574 A.2d 796 (1990).

this opinion; establishes that the department expressly stated that it did not grant the permittees any property rights merely because the department had authorized the construction of a dock that otherwise satisfied relevant laws and regulations. Accordingly, receipt of the permits in 1957 and 1984 did not instantly grant the permittees title or property rights to the contested littoral area underlying the dock and pilings. It is immaterial, however, that the permits did not grant the defendants' predecessors property rights in, or title to, the plaintiffs' littoral area, because the permits in this case have no bearing on the defendants' ability to assert a claim of right as part of a claim of adverse possession. As the Appellate Court correctly stated in *Matto* v. *Dan Beard, Inc.*, supra, 15 Conn. App. 476, "[o]ne claiming title by adverse possession always claims in derogation of the right of the true owner, admitting that the legal title is in another. The adverse claimant rests the claim, not on title, but on holding adversely to the true owner for the term prescribed by the statute of limitations." Simply stated, although the two permits did not vest title in the defendants or their predecessors or allow the defendants to bypass the requirements set forth in § 52-575, the permits equally did not render futile the defendants' ability to assert a claim of right to adversely possess the plaintiffs' littoral area.

The plaintiffs contend that the trial court properly found that the defendants were barred from asserting a claim of right as a result of this court's decision in *Bloom* v. *Water Resources Commission*, 157 Conn. 528, 536–38, 254 A.2d 884 (1969), a case not relied upon by the trial court. We disagree. In *Bloom*, the named defendant, the water resources commission, had granted a permit to the defendant, Albert E. Vallerie, to construct a marina on the littoral area appurtenant to Vallerie's shorefront property. Id., 529. The plaintiffs, owners of property to the immediate north and south

of the proposed marina, objected to the granting of the permit, claiming that it would hinder ingress and egress from their property; id., 531; and further claiming that they were entitled to a hearing prior to the issuance of the permit. Id., 532–33, 535. On appeal, this court concluded that the permit at issue, by operation of the limitations contained therein, had granted to Vallerie no rights as against the plaintiffs because the marina was situated within Vallerie's littoral area, the marina did not encroach upon the plaintiffs' littoral rights, and, therefore, the plaintiffs were not entitled to a hearing. Id., 536. Accordingly, *Bloom* does not address whether a party may establish a claim of right for purposes of adverse possession when its claim occurs under the auspices of a permit.

Having concluded that the trial court improperly determined that the defendants could not assert a claim of right because of the two permits, we next address whether the trial court improperly found that the defendants failed to satisfy the elements of adverse possession.[14] The defendants claim that the evidence established that they adversely possessed the contested littoral area. The plaintiffs disagree, asserting that the

[14] Because the defendants did not purchase the property until 1991, they must "tack on" their adverse possession of the contested littoral area with that of Morgan, their predecessor in title, in order to satisfy the fifteen year requirement set forth in § 52-575. "If one party's period of use or possession is insufficient to satisfy the fifteen year requirement, that party may tack on the period of use or possession of someone who is in privity with the party, a relationship that may be established by showing a transfer of possession rights. *Smith* v. *Chapin*, 31 Conn. 530, 531–32 (1863) . . . ." (Citations omitted; internal quotation marks omitted.) *McBurney* v. *Cirillo*, 276 Conn. 782, 813, 889 A.2d 759 (2006), overruled on other grounds by *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 284–89, 914 A.2d 996 (2007). The defendants purchased the property from Morgan in 1991, satisfying the privity requirement of tacking, and, as discussed herein, there is evidence that both the defendants and Morgan adversely possessed the plaintiffs' littoral area. Therefore, the period of Morgan's adverse possession, 1985 through 1991, may be tacked on to that of the defendants, 1991 through 2005, to satisfy the fifteen year requirement.

defendants failed to prove by clear and convincing evidence the necessary elements of adverse possession.[15] We agree with the defendants that the evidence established that they successfully adversely possessed the contested littoral area.

We begin by setting forth the elements of adverse possession. "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner. . . . A finding of adverse possession is to be made out by clear and positive proof. . . . The burden of proof is on the party claiming adverse possession. . . . *Woodhouse* v. *McKee*, 90 Conn. App. 662, 669, 879 A.2d 486 (2005); see also General Statutes § 52-575 (a) (fifteen year statute of limitation); *Roche* v. *Fairfield*, [supra, 186 Conn. 498] (stating elements)." (Internal quotation marks omitted.) *Alexson* v. *Foss*, supra, 276 Conn. 614 n.13.

---

[15] The plaintiffs assert that the defendants cannot claim that they established the elements of adverse possession because the trial court did not discuss or make factual findings regarding all of the elements of adverse possession. In support of their claim, the plaintiffs first contend that the required fifteen years have not passed because the defendants failed to introduce evidence of Morgan's interest in the littoral area adverse to that of the plaintiffs. The plaintiffs next contend that the defendants' use of the littoral area was not exclusive because the littoral area is "subject to the rights of several classes of persons" and there was "specific evidence" that the defendants had not excluded the plaintiffs or the public "from using the water in their littoral area." The plaintiffs finally contend that the defendants' adverse possession was not notorious because adverse possession of littoral areas requires an uncontested survey, a bilateral agreement between the neighbors, or a court judgment establishing the littoral boundary, in order for the aggrieved party to have actual notice that a claim is being asserted to her property. The plaintiffs therefore assert that the defendants' adverse possession could only have commenced following the completion of the 2000 survey. For the reasons discussed in this opinion, we disagree with the plaintiffs' contentions and conclude that the evidence established that the defendants satisfied the necessary elements of adverse possession.

The following facts were found by the trial court and are relevant to our resolution of the defendants' claim. Morgan, the defendants' immediate predecessor in title, reconstructed the dock and pilings in 1985 in the plaintiffs' littoral area in plain view and without the plaintiffs' permission. The plaintiffs, aware of the rebuilt dock, immediately believed that it was not in its former location and that it was encroaching upon their littoral area. The plaintiffs raised their concerns with Morgan, as well as others, for several years, but were unsuccessful in having the dock relocated. From approximately 1988 to 1991, Morgan continued to use the dock exclusively as if the littoral area was his own; he did not relocate the dock or its pilings from the plaintiffs' littoral area, despite their requests to do so.

Beginning in 1991, when the defendants purchased the property, until 2000, when the survey was completed, and up to 2005, when the plaintiffs commenced this action, the defendants remained in exclusive possession of the contested littoral area. During this period of time, the defendants openly and visibly possessed the littoral area below the floating dock and surrounding the pilings with the intent to use the area as their own. During this period, the defendants rejected the plaintiffs' requests to relocate the dock from their littoral area. Further, after the defendants refused to relocate the dock, they were informed by the plaintiffs that the 2000 survey definitively demonstrated that the dock and two pilings were within the plaintiffs' littoral area. When the plaintiffs finally commenced this action in 2005, approximately twenty years had passed since Morgan had reconstructed the dock and pilings on the plaintiffs' littoral area.

In the portion of its memorandum of decision devoted to the defendants' claim of adverse possession, the trial court found as follows: "The evidence establishes that for more than fifteen years prior to the filing of this

action, the defendants and their predecessors in title have maintained two pilings within the area of the plaintiffs' littoral rights. For the same period a [floating dock] has been attached to those pilings during the boating season, which is partially within the area of the plaintiffs' littoral rights." After analyzing *Matto* v. *Dan Beard, Inc.*, supra, 15 Conn. App. 458, the trial court then found that, "[u]nder these circumstances . . . the defendants have not acquired title to any portion of the plaintiffs' littoral [area] by adverse possession."[16]

In accordance with our standard of review, and after a careful review of the evidence, we are left with the definite and firm conviction that the trial court improperly found that the defendants had failed to prove their claim of adverse possession. We conclude that the defendants, and their predecessor in interest, Morgan, ousted the plaintiffs of possession of the littoral area underlying the floating dock and pilings, kept the plaintiffs out without interruption for more than fifteen years by an open, visible and exclusive possession of the littoral area, under a claim of right with the intent to use the littoral area as their own, and without the consent of the plaintiffs. Accordingly, the defendants have satisfied the elements of adverse possession and, therefore, because the plaintiffs' action was brought outside the fifteen year limitations period set forth in § 52-575, it is time barred.

The judgment of the Appellate Court is affirmed and the case is remanded to that court with direction to remand the case to the trial court with direction to

---

[16] The trial court had first found that "[t]he defendants' [pleadings] do not clearly set forth factual allegations supporting the conclusion that the defendants acquired title to a portion of the plaintiffs' littoral rights area through adverse possession. However, the parties, both during trial and in their [posttrial] briefs, have treated the [defendants'] position as an assertion of ownership by adverse possession. The court will do likewise."

render judgment for the defendants on the second count of their counterclaim alleging adverse possession.

In this opinion the other justices concurred.